# Bowlby *versus* Thunder.

A testator, by his will, which was written by himself on the first page of a sheet of paper, devised and bequeathed all his estate to his wife. On the third page of the same sheet he wrote, on the same date, the following two papers:

" Be it known to whom it may Concern, that in willing all my estate, real and personal, in favour of my wife Catharine I do it with the fullest Confidence (that should she survive me), she will Carry my intentions, as to the ultimate distribution, of it into effect, . . . . . so far as in her opinion, my Children and Grand Children, respectively, may prove worthy of her attention. I have therefore deemed it prudent (should it be the will of God that she should survive me, *To Leave her*, who has Toiled and Labored with me through Life, the management and disposition of our Joint Savings . . . . . knowing that she will not only Judge of the Necessities of my respective heirs, but also of those most worthy of her regard. Under those impressions (should it please God to Call me first), I have the fullest Confidence of my intentions being Caried into due execution.    CHARLES JOHNSON." ·

" Memorandum (*for her*).   my Mansion house, Corner Lombard and 10th street, *N. West*, to my Grandson, Charles Johnson. (The factory to my son Charles.)   The house I reside in, and the two *frame* houses, N. E. corner of Lombard and 10th streets, to the children of my

[Bowlby *v.* Thunder.]

daughter, *Anne*, being for her own Use during her Life, *in Trust*, so as not to be subject to the debts, Controle, or engagements of her husband. All the remaining part of my estate, divided among my heirs, as my wife may deem advisable. And I recommend to her To call on my Worthy friend, Benjamin Jones, Jr., as her assistant, who (if it suits him to serve) will faithfully execute the duties.

CHARLES JOHNSON."

*Held,* that the above two papers (which were admitted to probate with the will) formed no part of the testator's will, and did not create a trust, or in any way qualify the devise in fee to his wife.

January 25, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of July Term, 1883, No. 207.

Ejectment, by Elena M. Thunder et al. against Anne E. Bowlby, et al., for a lot of ground and buildings thereon erected, situate at the northeast corner of Lombard and Tenth streets in the city of Philadelphia.

On the trial, before ELCOCK J., it was admitted that Charles Johnson, through whom both parties claimed, died seised of the premises in question in 1838. He left to survive him his widow Catharine Johnson, two children, of whom Anne E. Bowlby was one, and some grandchildren, having made his last will and testament, written on the first page of a sheet of foolscap, and two writings on the third page of the same sheet, all in his own handwriting, as follows to wit:—

"In the name of the Father, and of the Son, and of the Holy Ghost. Amen. I, Charles Johnson, of the city of Philadelphia and Commonwealth of Pennsylvania, House Carpenter, and at this date agent for the Girard estates, being of Sound memory and Understanding, do make and Publish this my last will and Testament in the following manner That is to say—

"*Item.* I Give and bequeath unto my beloved wife Catharine, all my estate, Real, personal, and mixed of whatsoever description, for her own sole Use and Benefit, — with full authority to sell and dispose of the whole, or any portion of the same, should she at any time deem it necessary so to do.

"*And Lastly.* I do hereby nominate and appoint my said wife Catharine, to be my sole executor, with full authority to Call in and appoint one Other person to assist her in the execution of this my last will and Testament

"And, in witness whereof, I, the said Charles Johnson, have to this my last will and Testament, set my hand and seal, on this Third day of March, in the Year of our Lord one Thousand eight hundred and thirty-eight 1838

"CHARLES JOHNSON. [SEAL.]

"Signed, sealed, delivered, and published by the said Charles Johnson as and for his last will and Testament, in the presence of us, who have, at his request, subscribed our names thereto, in the presence of the testator and each of us.

"NATHANIEL B. COOPER,<br>
"JOHN P. ROBERTS.

"Be it known to whom it may Concern, that in willing all my estate, real and personal, in favour of my wife Catharine I do it with the fullest Confidence (that should she survive me), she will Carry my intentions, as to the ultimate distribution of it into effect, . . so far as in her opinion, my Children and Grand Children, respectively, may prove worthy of her attention.

"I have therefore deemed it prudent (should it be the will of God that she should survive me, *To Leave her*, who has Toiled and Labored with me through Life, the management and disposition of our Joint Savings . . . . knowing that she will not only Judge of the Necessities of my respective heirs, but also of those most worthy of her regard. Under those impressions (should it please God to Call me first), I have the fullest Confidence of intentions being Carried into due execution.          "CHARLES JOHNSON.

"Philadelphia, March the third, eighteen hundred thirty-eight 1838.

"Memorandum *(for her)*. my Mansion house Corner Lombard and 10th street, *N. West*, to my Grandson, Charles Johnson. (The factory to my son Charles.)  The house I reside in, and the two *frame* houses, N. E. corner of Lombard and 10th streets, to the children of my daughter, *Anne*, being for her own Use during her Life, *in Trust*, so as not to be subject to the debts, Controle, or engagements of her husband.

"All the remaining part of my estate, divided among my heirs, as my wife may deem advisable.

"And I recommend to her To call on my Worthy friend,

"Benjamin Jones, Jr., as her assistant, who (if it suits him to serve) will faithfully execute the duties.

"CHARLES JOHNSON.

"Philadelphia, March 3d, 1838."

The above three papers were admitted to probate, as the will of Charles Johnson, October 29, 1838, and letters testamentary were granted to his widow.

On January 4th, 1842, Catharine Johnson, the widow, by deed acknowledged on that day, and recorded April 14th, 1842, for the consideration of $3000, as therein recited, granted and

conveyed the said premises to the said Silvano A. Martinez, in fee, who immediately went into possession.

Two days after the date of said deed to Martinez, Catharine Johnson, then 72 years of age, married the said Martinez, who was 23 years of age. They lived together until her death in August, 1863, after which Martinez continued in possession of the premises in question, by his tenants, until his death on March 16, 1881. By his will, dated February 6, 1877, proved March 25, 1881, he devised his residuary real estate, including the premises in question, to the plaintiffs. This constituted the plaintiff's title.

Soon after the death of said Martinez, Mrs. Anne E. Bowlby notified the tenants of the property in dispute to pay rent to her, claiming as owner and devisee for life under the will of her father, Charles Johnson, which they did, and she admitted possession at the date the writ issued.

The defendants presented the following points:

1. The three testamentary papers left by Charles Johnson, are to be read together, and they create and vest: (*a.*) A life estate in the property in issue in Catharine Johnson, the testator's widow. (*b.*) After her death, a further life estate in their daughter Anne. (*c.*) And after Anne's death an absolute estate in the children of Anne. Refused.

2. There is no contingency provided for in the said testamentary writings, to lawfully authorize the said Catharine Johnson to convey more than her life estate in the property, or to dispose of the property in a testamentary manner to any one not an heir of the said Charles Johnson; and the plaintiffs failing to show title in themselves, the verdict should be for the defendants. Refused.

The judge directed the jury to find a verdict for the plaintiffs, subject to the question of law reserved, "whether the testamentary papers of Charles Johnson vested a fee in Catharine Johnson in the premises which are the subject of this action." Verdict accordingly.

The court afterwards, in an opinion filed, entered judgment for plaintiffs on the verdict and reserved question, whereupon the defendants took this writ of error, assigning for error the refusal of their points, as above, and the said judgment for plaintiffs on the reserved question.

*Amos Briggs* and *F. F. Brightly,* for the plaintiffs in error:— Having regard to the whole scheme of Charles Johnson's will, as disclosed by the three testamentary papers, can it be doubted, that the testator intended that his estate should be ultimately distributed as specified in his third and last testamentary paper? He commences the second paper with these

[Bowlby v. Thunder.]

words: "That in willing all my estate, real and personal, in favor of my wife Catharine, I do it, with the fullest confidence, that she will carry *my* intentions as to *ultimate distribution*, into effect." In the third paper he provides: "The house I reside in and the two frame houses north-east corner of Lombard and Tenth streets, to the children of my daughter Anne; being for her own use for life, in trust so as not to be subject to the debts, contracts, or engagements of her husband." How can we reconcile this devise with the theory that Mrs. Johnson was seised as of the fee? How could the premises be for the use of the testator's daughter Anne for life, remainder to her children, if the fee had already been devised to Mrs. Johnson?

The language is such as to create a trust. Perry on Trusts, § 112; Warner v. Bates, 98 Mass., 276; Pennock's Estate, 20 Pa. St., 280 (second conclusion of law). We submit that the case is ruled by Fox's Appeal, 99 Pa. St., 386.

It is argued that the conveyance to Martinez was a good execution of the power of sale vested in her by the will. But we answer, that where one who has an estate and a power, makes a general conveyance, his own estate alone passes. Jones v. Wood, 16 Pa. St., 42; Hay v. Mayer, 8 Watts, 203; Wetherill v. Wetherill, 18 Pa. St., 265.

*Francis Rawle* (with him *Walter George Smith, E. D. Loughlin* and *Samuel Robb,*) for the defendants in error:—We submit, that the will of Charles Johnson is wholly contained in what he styles his "last will and testament," and the second and third papers were not intended by him as codicils to his will, but (like letters often found in wills) as mere explanations to his family and suggestions to his wife. But if, for any reason, they should be held to be codicils, then the judgment was right, because the will of Charles Johnson gave a fee simple in the realty to his devisee, and the precatory words in what is called the first codicil, and the mere suggestions in what is called the second codicil, but which the testator called a "memorandum (for her)," did not convert the devisee into a trustee; and because, if the devisee was a trustee, she was a trustee with full authority to sell the whole or any part of the estate, should she deem it necessary so to do, and which power she afterwards duly exercised, and after the lapse of so long a time, the exercise of this discretion cannot even be inquired into, much less impeached; and there is no evidence here on the subject.

Chief Justice MERCUR delivered the opinion of the court, February 18th, 1884.

[Bowlby *v.* Thunder.]

The writing executed first is a full and complete will. It was signed, sealed and declared by the testator as and for his last will and testament, in the presence of two persons who sub-scribed their names as witnesses thereto. He therein gave and bequeathed unto his wife all his estate, real, personal and mixed, for her sole use and benefit, with full authority to sell and dispose of the whole, or any portion thereof, should she at any time deem it necessary to do so. This authority to sell was mere surplusage. It did not enlarge the power which the previous devise in fee simple gave her, nor did it indicate any intention to restrict her in the exercise of that power. Neither of the subsequent writings professes to be either a part of his will or a codicil thereto. The first of them is addressed " to whom it may concern." Its purpose appears to have been to inform all persons who might feel in-terested in the disposition he had made of his property, why he had devised his whole estate to his wife. It was by reason of his great confidence in her, who had toiled and labored with him through life, that he deemed it prudent to give her the management and disposition of their joint savings.

While he does therein express his confidence that she will carry out his intentions in the ultimate distribution of the estate so far as in her opinion his children and grandchildren respectively, may prove worthy of her attention, yet he makes no disposition of any part of his estate, nor does he intimate any intention to restrain her free will. It is " her opinion," not his, which is to guide and control her disposal of the pro-perty. He does not even indicate which children or grand-children he thinks worthy of his consideration. That thought is not suggested. On the contrary, the suggestion relates to those only that, in her opinion, ", may prove worthy of her attention." After thus stating some of his reasons for having devised his property to his wife, he proceeds in another writ-ing to address her. It is styled " memorandum (for her)." He does not therein profess to make any devise himself. It contains recommendations and advice to her as to what he would be pleased to have her do, and as to the land in ques-tion his recommendation is more specific than in the previous writing. Not a word therein, however, indicates an intention to qualify or change the absolute devise which he had made to her, nor to take from her the right to use, enjoy and dis-pose of the property as her own. The fact that the will does not contain words of inheritance did not prevent the whole estate of the testator in the property devised from passing to his wife, under section 9 of the Act of 8th April, 1833, as it does not appear, by devise over or by words of limitation or

[Bowlby v. Thunder.]

otherwise, in the will, that the testator intended to devise a less estate.

It is contended, however, that these two writings should be considered a part of the will, and that the language therein is sufficient to create a trust. Conceding that at one time such language in a will would have been held sufficient in England to create a trust, yet the rule in Pennsylvania is now clearly settled otherwise. Words in a will merely expressive of desire, recommendation and confidence, are not sufficient to convert a devise or bequest into a trust. Pennock's Estate, 8 Harris, 268; Jauretche v. Proctor, 12 Wright, 466; Second Reformed Presbyterian Church v. Disbrow, 2 P. F. Smith, 219.

Standing by themselves alone, expressions of a desire or wish of the testator as to a direct disposition of his property may constitute a valid devise or bequest thereof; yet the rule is different when such expressions are used after an absolute disposition has been made. Having made an unqualified devise of his property, no precatory words to his devisee can defeat the estate previously devised. Burt v. Herron, 16 P. F. Smith, 400.

While the language contained in these two writings must control the effect to be given to them, yet there is another fact significant of the intent of the testator. Hence, notwithstanding all the writings bear the same date, and are on one sheet of paper, yet a blank page intervenes between the first, or will, and the two subsequent writings. In thus separating them the testator manifestly further intended to indicate that they constituted no portion of his will. Still further, the first he executed with the usual formalities of a will, under seal, and in the presence of subscribing witnesses, while neither of the subsequent writings has any seal nor any witness. The fact that all the writings were probated at the same time cannot change the character previously stamped upon them. Probating does not create a will. It cannot make a will out of a writing which was not a will before. Therefore, notwithstanding the able argument of the counsel for the plaintiffs in error, we think the learned Judge committed no error in directing the jury to render a verdict for the plaintiffs below, nor in entering judgment thereon in their favor on the point of law reserved.

                                    Judgment affirmed.