## Goetz's Estate (No. 1).

*Jurisdiction—Power over corporations—Continuance of decedent's business.*

1. Where the executors of an estate with the consent of the beneficiaries under the will organize a corporation for the purpose of continuing the testator's business, and assign and transfer to the corporation the property of the estate, and thereafter the corporation makes large profits, the Orphans' Court has no jurisdiction in auditing the account of the executors, to ascertain and

distribute the profit made by the company; nor has it power to fix the compensation of one of the executors who was the business manager of the corporation, for his services as such.

2. In such a case the estate, even as the holder of all of the stock, would not be the owner of the corporation, but only of the shares of its capital stock, which constitute a species of property entirely distinct from the corporate property. The directors of the corporation alone have the power to determine whether profits have been earned, and if earned whether they should be divided among the shareholders; and to the directors alone is entrusted the power of fixing the compensation of the officers and employees of the corporation. Over such powers the Orphans' Court has no supervision.

Argued Feb. 27, 1912. Appeals, No. 72, Jan. T., 1912, by Ferdinand Goetz Sons' Company, and No. 73, Jan, T., 1912, by Fred W. Goetz, Executor from decree of O. C. Berks Co., Nov. T., 1910, No. 35, dismissing exceptions to adjudication in Estate of Ferdinand Goetz, deceased. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication. Before BLAND, P. J.

Ferdinand Goetz, a member of the firm of Winter & Goetz, tanners, died leaving a will wherein he gave to his widow for life the entire income of his estate. He named his son, Fred W. Goetz, and his son-in-law, William C. Billman, executors. He left six children, two of whom were minors.

The executors, with the consent of the widow and adult children, purchased the interest of the surviving partner in the tanning business for $80,500 and organized a corporation under the laws of Pennsylvania, "The Ferdinand Goetz Sons' Company," with a capital of $75,000, divided into 1,500 shares of the par value of $50.00 each.

In the application for a charter the said shares were set forth thus:

"Fred. W. Goetz ............747 shares.
W. C. Billman ..............747    "

Charles E. Miller . . . . . . . . . .   2 shares.
Karl Goetz . . . . . . . . . . . . . . . . . .   2   "
George Rumer . . . . . . . . . . . . . .   2   "

Fred. W. Goetz and Wm. C. Billman were the executors as aforesaid, and Karl Goetz was a son of the testator, while Charles E. Miller and George Rumer were workmen in the tannery.

None of the said parties paid any money for their shares, the capital being paid in full by a transfer of the tanning business which had for many years been prosperous and then belonged entirely to the testator's estate. Fred. W. Goetz was made President and Wm. C. Billman Treasurer of the corporation. In June, 1910, Mr. Billman, claiming to own in his own right the 747 shares standing in his name, took the certificates therefor from the corporation's safe.

George Z. Goetz, a son of the testator, a minor, having for his guardian the Reading Trust Company, compelled the filing of an inventory and account. Mr. Billman filed the account, refusing to charge himself with 747 shares of stock. Fred. W. Goetz, his co-executor, joined in the account with a protest that not only the 747 shares but all the shares should be embraced as part of the assets of the estate. George Z. Goetz, by his guardian, filed an exception to the account based on the omission of the shares of stock. The controversy was as to the 747 shares claimed by Mr. Billman. Testimony was submitted, Mr. Billman claiming the stock under an alleged arrangement with the widow, and the widow testified that she understood that the stock was to belong to the estate. The court below found the transaction a fraud upon the widow and children, and adjudged the shares of stock to belong to the estate. The court further proceeded to ascertain the profits which the corporation had made from the 12th day of November, 1904, to January 1, 1910, the amount thereof being $171,144.02. To this the court added the balance of the income account, $790.11, making a grand total of

$171,934.13. The court then deducted the $80,500 paid for Mr. Winter's interest, leaving a balance of $91,-434.13, which the court distributed to the widow. In a subsequent distribution the court distributed $18,-428.80 of the said sum of Mr. Billman as compensation for services rendered to the corporation.

Fred. W. Goetz, Executor, filed exceptions to the adjudication.

The exceptions were dismissed. Both the Ferdinand Goetz Sons Company and Fred. W. Goetz, Executor, appealed.

*Errors assigned* were is dismissing the exceptions.

*Cyrus G. Derr,* for appellants, cited, Monongahela Bridge Co. v. Traction Co., 196 Pa. 25; Stitzel's Estate, 221 Pa. 227.

*Jefferson Snyder,* of *Snyder & Zieber,* for William C. Billman, appellee.

OPINION BY MR. JUSTICE BROWN, July 2, 1912:

These two appeals will be disposed of together. The same questions are raised by each and the assignments of error are identical. It is not necessary that we decide whether the Ferdinand Goetz Sons' Company has any standing as an appellant, as the appeal of Frederick W. Goetz, executor, must be sustained.

What the court had before it in adjudicating the account of the executors of Ferdinand Goetz, deceased, was his estate, and the parties before it were his executors, his widow and children; but, in awarding to the widow what it found to be the net income of the estate of the testator, it undertook to find what the net profits of the Ferdinand Goetz Sons' Company, a corporation, had amounted to from November 12, 1904, to January 1, 1910, and, after fixing the compensation to be paid out of them to the business manager of that corporation,

awarded the balance to the widow. In other words, without having before it the Ferdinand Goetz Sons' Company, the court below found that the balance of its net profits during the period stated, after paying the purchase price of the interest of Ferdinand Winter in the partnership, amounted to $90,644.02, and decreed that of this sum W. C. Billman, the business manager of the corporation, should receive $18,428.80 as the balance due him for services to the corporation, and that the remainder of the said net profits should be paid to the widow. This anomalous adjudication was made because the court found that the estate of the testator was the owner of 1,494 of the 1,500 shares of the capital stock of the Ferdinand Goetz Sons' Company, or six shares less than the entire stock issue. Suppose the estate was the owner of all the stock, what the court below did would be none the less anomalous. The estate, as a holder of all the stock, would not be the owner of the corporation, but only of the shares of its capital stock, which constitute a species of property entirely distinct from the corporate property. A shareholder has no distinct and individual title to the moneys or property of the corporation, nor any actual control over it: Bidwell v. Pittsburgh, Oakland & East Liberty Passenger Railway Company, 114 Pa. 535. "We have been referred to no authority, and we know of none, that asserts the doctrine that the purchaser of all the shares of the capital stock of a corporation thereby becomes the owner of its property. On the contrary the principle is well established that the shares of the capital stock of a corporation are essentially distinct and different from the corporate property, and that the owner of all the stock of a corporation does not own the corporate property or become entitled to manage or control it. 'A corporation,' says Mr. Cook in his work on Corporations, Section 6, 'is an entity, an existence, irrespective of the persons who own all its stock. The fact that one person owns all of the stock does not

make him and the corporation one and the same person.'
In Morawetz on Private Corporations, Sec. 1009, it is
said that 'it is well settled that all the shares in a cor-
poration may be held by a single person, and yet the cor-
poration continues to exist; and if the charter or by-
laws should require certain acts to be done by more
than one shareholder, the sole owner may transfer a
portion of his shares to other persons, so as to conform to
the letter of the rule.' In Bidwell v. Pittsburgh, Etc.,
Pass. Railway Company, 114 Pa. 535, Mr. Justice
CLARK, delivering the opinion of the court, says: 'The
shares in a corporation constitute a species of property
entirely distinct from the corporate property; a share-
holder has no distinct and individual title to the moneys
or property of the corporation, nor any actual control
over it; the shares represent a right to participate in
profits only' ": Mr. Justice MESTREZAT, in Mononga-
hela Bridge Company v. Pittsburgh & Birmingham
Traction Company, 196 Pa. 25.

How are corporate profits to be ascertained and by
whom are they to be distributed? Surely not by an
Orphans' Court, to which no living manufacturing com-
pany is ever answerable for the management of its af-
fairs, and whose jurisdiction and supervisory powers do
not extend to representatives of such a dead corpora-
tion. The affairs of a corporation are managed by a
board of directors, who, in the first instance, are to de-
termine whether profits have been earned and whether,
in their discretion, they ought to be divided among the
shareholders; and, if such discretion is abused, the
remedy for its correction is not to be found in an Or-
phans' Court.

Until a dividend of the profits of a corporation has
been declared by its board of directors, a stockholder
has no legal title to any interest in them. The shares
of stock which he holds represent only a right to par-
ticipate in the profits, and that right is to be enforced
ordinarily only after a dividend of the profits has been

declared: Corgan v. Lee Coal Co., 218 Pa. 386; Hyatt
v. Allen, 56 N. Y. 553; Goodwin v. Hardy, 57 Me. 143;
Phelps v. Farmers & Mechanics Bank, 26 Conn., 269;
Cook on Stock and Stockholders and Corporation Law,
Sec. 4. As just stated, the Ferdinand Goetz Sons' Com-
pany was not even before the court at the adjudication,
and yet it assumed to ascertain its profits, and, in effect,
to make a cash distribution of them, though they were
not represented by money in the treasury, but existed
only in the form of materials on hand, manufactured
goods, accounts receivable, etc. And even more than
this was done, for the court assumed to fix the compen-
sation of William C. Billman, the business manager of
the corporation, for his services, and ordered that out of
the profits he should be paid the sum of $18,428.80, in
addition to what he had already received. All this was
coram non judice. The common law was ignored, as
were the express words of the act of May 14, 1891, P.
L. 61, which declare that the business of every corpora-
tion created under the general corporation act of April
29, 1874, P. L. 73, shall be managed and conducted by a
president and a board of directors or trustees.

If profits have been earned by the Ferdinand Goetz'
Sons' Company, to which the widow of the testator is
entitled through dividends paid, or to be paid, to his ex-
ecutors, she will receive them; and, if William C. Bill-
man is entitled to compensation for his services as busi-
ness manager of the corporation, he has his remedy to
compel it to pay him. Neither he nor Mrs. Goetz will
be prejudiced by reversing the decree which the court
below was powerless to make.

The first, second, thirteenth and fourteenth assign-
ments of error filed in the appeal of Frederick W. Goetz,
Executor, are sustained, and the decree of the court be-
low, in surcharging the accountants with profits of the
Ferdinand Goetz Sons' Company, and in directing that
William C. Billman be paid out of the same, as compen-

sation for his services as business manager, is reversed, the costs on these two appeals to be paid out of the funds of the estate.