# Herskovitz's Estate No. 1.

*Wills—Gift of entire estate—Modification by subsequent gifts— Precatory words—Cutting down an absolute estate.*

Where a testator has made an absolute gift of all of his property to his wife, subsequent expressions of his desire, or even directions as to certain gifts to be made by her, will be construed merely as precatory words, and do not affect the quality or diminish the quantity of the estate given to the wife.

Where the testator wrote his own will and left his entire estate to his widow following which gift he wrote "and above all my lawful wedded wife must see and comply with my last requests, which is as follows: 'she shall pay out'" certain specified gifts to designated charities, the direction as to the gifts to charity is merely precatory and does not defeat the absolute estate previously given the wife.

Argued April 1, 1923. Appeal, No. 138, April T., 1923, by Jewish Consumptive Relief Society, from order of O. C. Fayette County, Dec. T., 1922, No. 65, dismissing exceptions to the distribution account of Dr. Rose Herskovitz, Executrix, in the matter of the Estate of Dr. Adolph Herskovitz, deceased. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Exceptions to Executrix's account. Before WORK, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions and awarded the balance shown to be remaining in the hands of the executrix to her for distribution to herself as widow and legatee. Jewish Consumptive Relief Society appealed.

*Error assigned* was the decree and order of the court, quoting it.

*H. E. Hackney,* of *Shelby, Henderson & Hackney,* and with him *Elias Goodstein,* for appellant.

*J. B. Adams,* for appellee.

OPINION BY TREXLER, J., July 12, 1923:

Dr. Adolph Herskovitz, a resident of Uniontown, Pennsylvania, died February 19, 1922, leaving to survive him his widow, Dr. Rose Herskovitz, and an only child, J. Joseph Herskovitz, a minor. Testator was an orthodox Jew and his native language was Hungarian. He wrote his own will in the English language. After the usual preface he devised all his real estate, stating that it "shall belong to my lawful wedded wife, Dr. Rose Herskovitz, up until the time she is going to remarry. And when remarried all my property above mentioned shall become the property of my son J. Joseph Herskovitz. But if my lawful wedded wife, Dr. Rose Herskovitz, is not going to remarry, then she shall become the sole owner of all the cash balance in the Citizens Title and Trust Co., in the Fayette Title & Trust Co., and in the Second National Bank of Uniontown, Pa., and she shall also become the sole owner of all my cash holdings in the Dollar Savings Bank of Pittsburgh, Pa., and my Bonds, Deeds and Title to Coal Lands and various holdings in my name." Then follows the gift to his wife of the "Cash Dead Benefits," of all the beneficial associations of which the deceased was a member, the clause ending after the enumeration of the societies with the words "and above all my lawful wedded wife must see and comply with my last requests, which is as follows: "She shall pay out as charity to Mrs. Yetta Ackerman and her children in the City of New York, the sum of ($500.00) Five Hundred Dollars; to the Orphans Institute Bet Yetsomin in the City of New York the sum of Five Hundred Dollars ($500.00); To the Home of the Old Age, in the City of Pittsburgh, the sum of Five Hundred Dollars, ($500.00); To the Montefiorre Hospital, Pittsburgh, Five Hundred Dollars, ($500.00); To the Denver Colorado Institute for Tuberculosis, Two Hundred Dollars ($200.00) and as long as she will live she

shall pay not less than Two Hundred Dollars ($200.00) per annum to the Institute Mayer Bell Hanes at the Holy City of Jerusalem, Palestine. And no Jewish person shall be permitted to view my body or touch my remains in the City of Uniontown but my body shall be transferred to the Austria Hungarian Congregation Poale Zedeck, 133 Crawford St., Pittsburgh, Pa., where they will take care of my remains in my own graveyard, which will be justly due me. I further wish that my lawful wedded wife shall see that my Jarres Zeit shall be fully observed, and if my son J. Joseph Herskovitz can not remember a small prayer for his Papa's soul in the morning and the evening as a Kaddish then she shall hire a good pious old man to do this instead of my son Joseph. But above all she must see that my son J. Joseph Herskovitz education and comfort shall be paid for up until he will become a complete man, whatever he may choose to be shall be paid from my estate. I hereby hope, wish and demand that every point of my last will shall be wholly fulfilled by my lawful wedded wife to a T. I further wish that the executor, guardian and Father shall be the only person shall be my lawful wedded wife, Dr. Rose Herskovitz. Over my store, stock of jewelry and everything that is under the name of Dr. Adolph Herskovitz & Co. shall be disposed of by no one else but my lawful wedded wife Dr. Rose Herskovitz. And if there should be any debts whatsoever contracted under my good name, shall be paid, 100 cents on each dollar before 30 days after my death. I further wish that my mother-in-law Mrs. Lottie Cohen shall be taken care of and comforted up until the last moment of her life from my estate. I further wish that when my son J. Joseph Herskovitz shall complete his course of anything that his heart may desire, his mother, my lawful wedded wife, Dr. Rose Herskovitz, shall make him his first start in life, commercially, medically or theoreticaly, either in fitting him up in an office or whatever course he has completed. I do hereby make constitute and appoint Dr.

Rose Herskovitz, to be Executress of this my last Will and Testament."

The widow, Dr. Rose Herskovitz, elected to take under the will and filed a declaration that she had no intention of remarrying and that she claimed the absolute estate. Some of the charitable institutions mentioned in the will asked to have the amounts mentioned in connection with them in the will, allotted to them in the distribution of the estate. The answer to their demands was that the directions in the will touching the gifts to their institutions are merely precatory and not mandatory. The lower court took this view.

"Words in a will expressive of desire, recommendation and confidence may amount to a declaration of trust, when it appears from the parts of the will that the testator intended not to commit the estate to the devisee or legatee or the ultimate disposal of it to his kindness, justice or discretion: Pennock's Est., 20 Pa. 268. The principle of this case has been uniformly followed in a long line of later ones marking the distinction between words and expressions which are regarded as either precatory or mandatory: Jauretche v. Proctor, 48 Pa. 466; Church v. Disbrow, 52 Pa. 219; Burt v. Herron, 66 Pa. 400; Bowlby v. Thunder, 105 Pa. 173; Hopkins v. Glunt, 111 Pa. 287; Boyle v. Boyle, 152 Pa. 108"; Dickinson's Est., 209 Pa. 59. Commenting upon Pennock's Estate, supra, the Supreme Court in Miller v. Stubbs, 244 Pa. 482, states "While expressions of a desire or wish of a testator as to a specific disposition of his property, standing by themselves alone, may establish a valid bequest or devise, this is not the rule when such expressions are used after the testator has made an absolute disposition of his property. After an absolute bequest or devise has been made, no precatory words of the testator to his legatee or devisee can defeat the estate previously granted: Hopkins v. Glunt, 111 Pa. 287." See Chew v. Chew, 266 Pa. 526. An expression of a desire as to the disposition of his estate may be as effective as a command for it is a

379, (1923).]          *Opinion of the Court.*

disposition of his estate, but when the testator expresses a desire as to what the legatee or devisee shall do with the estate bequeathed to him, the words are merely precatory: Miller v. Stubbs, supra. It is this distinction which runs through the cases and which furnishes the solution to the question before us. There is in this will an absolute estate given to the widow of the deceased. It is a gift without any limitation over, and without the intervention of a trustee. Having vested the property in her she is asked to comply with the testator's requests; she is to be the actor in the matter; she shall pay out as charity certain sums. He expresses the hope, wish and demand that his wishes may be carried out. If the bequest had been given directly by the testator, a different proposition would present itself, but having disposed of his entire personal estate absolutely to his *widow* and subsequently expressed his desires as to what she should do with it, we must hold that such words do not affect the quality or diminish the quantity of her estate, but merely indicate a desire or recommendation on the part of the testator that the primary object of his bounty may at some time do what he asks her to do. Even if the words are such as may be ordinarily regarded as commands, they are not sufficient to establish an intention, "that is not to be gathered from a consideration of the operative words upon the face of the instrument": Boyle v. Boyle, 152 Pa. 108.

The decree of the orphans' court is affirmed. Appellant to pay the costs.