J-A27008-23
J-A27009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF KENNETH C. HAUGH, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: RODNEY HAUGH | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 163 MDA 2023 |

Appeal from the Order Entered January 3, 2023
In the Court of Common Pleas of York County Orphans' Court at No(s):
6721-0040

| | | |
|---|---|---|
| IN RE: ESTATE OF KENNETH C. HAUGH, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H & H CASTINGS | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 179 MDA 2023 |

Appeal from the Order Entered January 3, 2023
In the Court of Common Pleas of York County Orphans' Court at No(s):
6721-0040

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED: NOVEMBER 4, 2024**

Before the Court are two appeals[1] from the order of the Court of

Common Pleas of York County, Orphans' Court Division, granting a petition

---

[*] Former Justice specially assigned to the Superior Court.

[1] We have consolidated these appeals, *sua sponte*, pursuant to Pa.R.A.P. 513.

for declaratory judgment filed by Deborah A. Haugh ("Deborah"). After our careful review, we reverse.

Kenneth C. Haugh ("Testator") served as president of H&H Castings, Inc. ("Company"), and owned 82% of the Company's shares. *See* Petition for Declaratory Judgment, 3/26/21, at ¶¶ 13-14. Testator died on December 23, 2020, survived by his wife, Deborah, his three daughters, Elizabeth Lynne Haugh, Abby M. Meissner, and Tisha M. O'Donnell, and his grandson, L.C.[2] *See id.* at ¶¶ 10-11. In 2000, Testator had added Deborah to the Company's payroll; she also received health and dental insurance coverage and matching 401K contributions. *See id.* at ¶¶ 15-16. In the year 2020, Deborah received $353,500.00 in gross compensation. *See* Answer to Declaratory Judgment, 4/23/21, at Exhibit A (Deborah's 2020 W-2 Wage and Tax Statement).

On November 21, 2016, Testator executed a will in which he provided for the disposition of his shares in the Company as follows:

> (B) I give to my children, ELIZABETH LYNNE HAUGH, ABBY M. MEISSNER, TISHA M. O'DONNELL, and [L.C.], my grandchild from my deceased daughter, Amy M. Haugh, *per stirpes* and in equal shares, my stock in H&H Castings, Inc.[,] and my fifty percent (50%) interest in the property and holdings of Water Street Investment. **I direct that my wife, DEBORAH A. HAUGH[,] remain on the payroll of H&H Castings, Inc.[,] for the remainder of her life.**

Last Will and Testament of Kenneth C. Haugh, 11/21/16, at ITEM FOURTH(B) (emphasis added).

---

[2] L.C. is the son of Amy M. Haugh, Testator's deceased daughter.

On January 27, 2021, Timothy P. Ruth, Esquire, counsel for the Company, sent a letter to Deborah informing her that her employment with the Company was being terminated as of the date of the letter and that her health insurance coverage would cease as of the end of that month.  ***See*** Petition for Declaratory Judgment, ***supra***, at Exhibit F (Attorney Ruth letter to Deborah).  On March 26, 2021, Deborah filed the instant petition, seeking a declaratory judgment that:

> the provision found in ITEM FOURTH(B) of the Will is upheld as a valid provision of the Will, necessitating that [the Company] must restore [Deborah] to her prior position on the Company's payroll and restore her attendant receipt of benefits thereto, in the amount and form she was last[ ]receiving from the Company at the time of [Testator's] passing, and must also restore to [Deborah] back-dated payroll and benefits from the date of her illegal termination on January 27, 2021.

***Id.*** at 9 (WHEREFORE clause).  Deborah did not name the Company as a respondent to the petition, nor did she provide the Company notice of the filing of the petition.

On April 23, 2021, Rodney Haugh, in his capacity as Executor of the Will of Testator ("Executor"), filed an answer to Deborah's petition, asserting that the provision contained in ITEM FOURTH(B) is unenforceable and requesting that the petition be dismissed.  The Orphans' Court held a status conference on May 4, 2021, after which it entered an order in which it stated that the matter would be decided on papers and set a briefing schedule for the parties. The court, acting *sua sponte* over the objection of the Executor, further ordered as follows:

It is further ordered and directed that the status[ ]quo existing at the time of the Testator's death shall be restored with regard to [Deborah's] employment at [the Company], such that she shall be immediately placed back on the payroll with all wages and income to be paid commensurate with her income and wages existing as of the date of death along with all employment benefits, including medical insurance coverage and retirement benefits, if applicable.

Orphans' Court Order, 5/4/21, at 2-3.

On May 17, 2021, the Executor filed a notice of appeal of the Orphans' Court's May 4, 2021 order. In its Pa.R.A.P. 1925(a) opinion, the Orphans' Court concluded that the order in question was not a final order, a mandatory injunction, or a collateral order and, as such, was not immediately appealable, as it "merely restores the status quo existing prior to Testator's death[.]" Rule 1925(a) Opinion, at 3. Deborah filed a motion to quash with this Court, which was granted on September 17, 2021.

While the matter was pending before this Court, the Company filed in the Orphans' Court a petition to intervene, which the court granted on August 23, 2021. The parties—which now included the Company—also submitted their respective briefs to the Orphans' Court. On October 20, 2022, Deborah died.[3] By order dated December 30, 2022, and filed January 3, 2023, the Orphans' Court granted Deborah's requested declaratory relief. Both the Executor and the Company filed motions for post-trial relief, which were

_____

[3] On January 3, 2023, the Orphans' Court entered an order substituting Deborah's executor, Patrick Duncan, as the petitioner in the declaratory judgment action.

- 4 -

denied by order dated January 25, 2023.[4] The Executor and the Company (collectively, "Appellants") filed timely notices of appeal. Although the Orphans' Court did not order the parties to file Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal, on March 29, 2023, the court issued a Rule 1925(a) opinion.

The Estate raises the following questions for our review:

1. When the statement, "I direct that my wife, Deborah A. Haugh, remain on the payroll of [the Company] for the remainder of her life," in Testator's Will is unenforceable as a matter of law, did the lower court err when it directed [the Company] to return [Deborah] to the payroll of the company?

A. Whether the specific bequest of [Testator's] stock in [the Company] and his interest in the partnership known as Water Street Investment was an absolute gift, not subject to a condition relating to payment from payroll to Deborah []?

B. Whether the sentence in [Testator's will] directing that Deborah [] remain on the payroll of [the Company] for the remainder of her life is precatory and not intended to strip the bequest of stock of its inherent attributes of financial

_____

[4] The Orphans' Court provided the following rationale for denying the post-trial motions:

[T]he Orphans' Court Rules specifically provide that no exceptions or post-trial motions may be filed to any order or decree of the court, with the Explanatory Comment further noting that "[t]he former exception practice is discontinued, and this Rule clarifies that post-trial motion practice applicable in the Civil Division of the Court of Common Pleas is not applicable in the Orphans' Court Division." Pa.R.O.C.P. 8.1.

Orphans' Court Order, 1/25/23.

and administrative control of the company and other benefits of ownership?

C. Whether the sentence in [Testator's will] directing that Deborah [] remain on the payroll of [the Company] is ambiguous and insufficiently specific to be enforceable against [the Company]?

2. Whether the lower court had jurisdiction over [the Company] or its assets when the corporation was not served or joined in the [a]ction filed by Deborah [] in the Orphan's Court [e]state proceedings for the [e]state of [Testator]?

3. Whether [Testator], who was an owner of a partial interest in [the Company] during his life, can, after his death, by will, direct [the Company] to distribute earnings of the corporation without specific authority of the corporation to act, effectively allowing such deceased partial interest owner to direct funds of the corporation?

Brief of the Estate, at 3-5

The Company, raises the following questions for our review:

1.  Does [Deborah's] death render this appeal moot?

2.  Did the Orphan's Court have jurisdiction over the assets of [the Company] when the [Company] was neither served nor joined, and when the Testator did not own the [Company's] assets at the time of his death?

3.  Did Testator, who was only a partial owner of stock in [the Company], and who gifted that stock by specific bequest to his children, have the authority to direct by will that Deborah [] "remain on the payroll" of the [Company]?

4.  Is the statement in the will directing Deborah [] to remain on the payroll of [the Company] for the remainder of her life precatory and, therefore, unenforceable?

5.  In the alternative, is the statement in the will directing Deborah [] to remain on the payroll of [the Company] for the remainder of her life ambiguous and insufficiently specific to be enforceable against [the Company]?

Brief of the Company, at 4-5.

- 6 -

We begin by addressing two issues affecting the justiciability of this matter and the jurisdiction of the Orphans' Court to decide the matter. First, the Orphans' Court posited that this appeal has been rendered moot by Deborah's death in October 2022. The court opined that Deborah's death ended the "life estate" created by Testator in his will and, therefore, "all issues regarding proper and future enforcement of the relevant provision are moot since the condition imposed on the transfer of [the Company's] stock no longer exists." Orphans' Court Opinion, at 3. In its brief, the Company asserts that "the [Orphans' Court's] position ignores the $542,347.86 loss to the [Company] during [Deborah's] life." We agree.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. **In re Duran**, 769 A.2d 497 (Pa. Super. 2001). "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." **In re Cain**, [] 590 A.2d 291, 292 ([Pa.] 1991). In that case, an opinion of this Court is rendered advisory in nature. **Jefferson Bank v. Newton Associates**, [] 686 A.2d 834 ([Pa. Super.] 1996). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." **Johnson v. Martofel**, 797 A.2d 943, 946[ (Pa. Super. 2002)]; **In re T.J.**, 699 A.2d 1311 (Pa. Super. 1997).

**In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002).

Here, the Company is correct that, if we were to determine that the Testator's language regarding the payments to Deborah was unenforceable, the Company would be entitled to relief in the form of repayment of the funds from Deborah's estate. As such, the appeal is not moot.

Next, both Appellants allege that the Orphans' Court lacked subject matter jurisdiction over the Company,[5] as "ownership and management of [the Company] was not within the control of Testator's estate and therefore was beyond the scope of Orphans' Court jurisdiction." Brief of the Company, at 18-19. Appellants assert that ownership of corporate stock is separate and distinct from ownership of corporate assets and that the Orphans' Court is without jurisdiction to "ascertain and distribute the profits or property . . . of the corporation in which Testator was a shareholder." *Id.* at 18, quoting *In re Myers' Estate*, 86 A. 89, 94-95 (Pa. 1913). Similarly, Appellants argue that "[a] shareholder has no distinct and individual title to moneys or property of the corporation, nor any actual control over it." Brief of Executor, at 31, quoting *In re Goetz Estate*, 85 A. 65, 66 (Pa. 1912). Appellants are entitled to no relief on this claim.

_____

[5] To the extent that the Company denies that the Orphans' Court had personal jurisdiction over it, we would simply note that the Company submitted itself to the jurisdiction of the Orphans' Court by filing a petition to intervene.

> [An] intervenor, by the act of intervention, submits to the jurisdiction of the court over his person. The reason and logic for this rule is apparent. One who voluntarily submits himself to a proceeding is in no position to question the jurisdiction of the court over his person. A person who seeks to become subject to the jurisdiction of the court by intervention may not thereafter take the anomalous position that the court was without jurisdiction to accomplish that which the intervenor asked the court to do.

*Bannard v. New York State Nat. Gas Corp.*, 172 A.2d 306, 312 (Pa. 1961) (internal citations omitted).

Section 711 of the Probate, Estates and Fiduciaries ("PEF") Code provides that the Orphans' Court Division shall exercise mandatory jurisdiction over, in relevant part, the following matters:

(1)   Testators' estates.--The administration and distribution of the real and personal property of Testators' estates and the control of the Testator's burial.

. . .

(12) Fiduciaries.--The appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the orphans' court division, except that the register shall continue to grant letters testamentary and of administration to personal representatives as heretofore.

. . .

(14) Legacies, annuities and charges.--Proceedings for the enforcement of legacies, annuities and charges placed on real or personal property by will, inter vivos trust, or decree of an orphans' court or orphans' court division or for the discharge of the lien thereof.

. . .

(17) Title to personal property.--The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the Testator or his nominee, or alleged by the personal representative to have been in the possession of the Testator at the time of his death.

20 Pa.C.S.A. §§ 711(1), (12), (14) and (7).

In addition, section 712 of the PEF Code provides for the exercise by the Orphans' Court of nonmandatory jurisdiction over, *inter alia*:

(3) Other matters.--The disposition of any case where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section.

*Id.* at § 712(3).

Our Supreme Court, in *In re Estate of Hall*, 535 A.2d 47 (Pa. 1987), explained that whether a case is heard in the Orphans' Court Division or another division of the Court of Common Pleas is not a matter of subject matter jurisdiction, but rather one of administrative convenience.

Article V of our Constitution abolished the Orphans' Courts of the Commonwealth and transferred their jurisdiction to the Courts of Common Pleas[,] to be exercised through an orphans' court division. [Section] 712 confers upon the Orphans' Court Division broad residual and discretionary jurisdiction over all matters that are subject to resolution by courts of common pleas generally. Moreover, it is now recognized that the divisions of the common pleas courts are established essentially for purposes of administrative convenience, and that each division is vested with the full jurisdiction of the whole court. [*See*] 42 Pa.C.S. § 952.

*Id.* at 59.

Here, it is clear that the interpretation of the Testator's will—the primary issue in this case—falls squarely within the mandatory jurisdiction of the Orphans' Court. Thus, to the extent that the interpretation of the will may have an impact on the disposition of certain assets of the Company, we conclude that the Orphans' Court possessed jurisdiction under section 712 to adjudicate "substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section." 20 Pa.C.S.A. § 712(3).

We now proceed to our analysis of the primary issues in this case. This matter involves the interpretation of a will and, thus, our standard of review

is *de novo* and our scope of review is plenary. ***In re Estate of McFadden***, 100 A.3d 645, 650 (Pa. Super. 2014) (en banc). In interpreting a will, we are mindful of the following principles:

> It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain.
>
> ***In re Houston's Estate***, [] 201 A.2d 592, 595 ([Pa.] 1964) (citations omitted). Thus, the primary goal of the construing court is to effectuate the intent of the testator. "In order to ascertain the testamentary intent, a court must focus first and foremost on the precise wording of the will, and if ambiguity exists, on the circumstances under which the will was executed." ***In re Estate of Weaver***, [] 572 A.2d 1249, 1256 [(Pa. Super. 1990)] (citations omitted)[]. The words of a will are not to be viewed in a vacuum, and "specific words or phrases will be rejected when they subvert or defeat the testator's whole testamentary scheme and divest the bounty from those whom he obviously intended to benefit." ***Id.***

***Murphy v. Karnek***, 160 A.3d 850, 861–62 (Pa. Super. 2017).

Although both appellants raise numerous issues, all of the remaining claims, at base, challenge the enforceability of the clause directing that Deborah remain on the payroll. Accordingly, for ease of disposition, we will address all claims together. Appellants argue that the sentence directing that Deborah remain on the payroll of the Company was both precatory and ambiguous and, thus, unenforceable. They further argue that Testator, who only owned a portion of the Company's stock, lacked the power to direct, by

will, that the Company retain Deborah on the payroll through a distribution of corporate earnings. We agree.

In *In re Herskovitz's Estate*, 81 Pa.Super. 379 (Pa. Super. 1923), the testator left his real estate and cash holdings to his wife, followed by a directive that "and above all my lawful wedded wife must see and comply with my last requests[.]" *Id.* at 380. The testator's "last requests" consisted of gifts to various charities. Certain of the charities "asked to have the amounts mentioned in connection with them in the will[] allotted to them in the distribution of the estate." *Id.* at 382. The Orphans' Court found that the testator's language was merely precatory and denied the charities' requests. This Court affirmed, stating the following:

> "Words in a will expressive of desire, recommendation[,] and confidence may amount to a declaration of trust, when it appears from the parts of the will that the testator intended not to commit the estate to the devisee or legatee or the ultimate disposal of it to his kindness, justice or discretion[."] *Pennock's Est.*, 20 Pa. 268 [(Pa. 1853)]. The principle of this case has been uniformly followed in a long line of later [cases] marking the distinction between words and expressions which are regarded as either precatory or mandatory[. *See*] *Jauretche v. Proctor*, 48 Pa. 466 [(Pa. 1865)]; *Church v. Disbrow*, 52 Pa. 219 [(Pa. 1866)]; *Burt v. Herron*, 66 Pa. 400 [(Pa. 1870]; *Bowlby v. Thunder*, 105 Pa. 173 [(Pa. 1884)]; *Hopkins v. Glunt*, [2 A. 183 (Pa. 1886)]; *Boyle v. Boyle*, [25 A. 494 (Pa. 1983)]; *Dickinson's Est.*, [58 A. 120 (Pa. 1904)].

> Commenting upon *Pennock's Estate*, *supra*, [our] Supreme Court in *Miller v. Stubbs*, [90 A. 1132 (Pa. 1914)], states[:] "While expressions of a desire or wish of a testator as to a specific disposition of his property, standing by themselves alone, may establish a valid bequest or devise, **this is not the rule when such expressions are used after the testator has made an absolute disposition of his property**. **After an absolute**

> **bequest or devise has been made, no precatory words of the testator to his legatee or devisee can defeat the estate previously granted**[. ***Id.*** at 1133.] ***See Chew v. Chew***, [109 A. 799 (Pa. 1920)]. An expression of a desire as to the disposition of his estate may be as effective as a command[,] for it is a disposition of his estate, but when the testator expresses a desire as to what the legatee or devisee shall do with the estate bequeathed to him, the words are merely precatory[. ***See***] ***Miller v. Stubbs***, ***supra***. It is this distinction which runs through the cases and which furnishes the solution to the question before us.
>
> There is in this will an absolute estate given to the widow of the deceased. It is a gift without any limitation over, and without the intervention of a trustee. Having vested the property in her she is asked to comply with the testator's requests; she is to be the actor in the matter; she shall pay out as charity certain sums. He expresses the hope, wish[,] and demand that his wishes may be carried out. If the bequest had been given directly by the testator, a different proposition would present itself, but having disposed of his entire personal estate absolutely to his widow and subsequently expressed his desires as to what she should do with it, we must hold that such words do not affect the quality or diminish the quantity of her estate, but merely indicate a desire or recommendation on the part of the testator that the primary object of his bounty may at some time do what he asks her to do. **Even if the words are such as may be ordinarily regarded as commands, they are not sufficient to establish an intention, "that is not to be gathered from a consideration of the operative words upon the face of the instrument[.]"** ***Boyle***, [25 A. at 496].

***Herskovitz's Estate***, 81 Pa.Super. at 382–83 (paragraph breaks and emphasis added).

Here, similar to ***Herskovitz's Estate***, Testator used words "such as may ordinarily be regarded as [a] command[."] ***Id.*** at 383. Nevertheless, those words followed a clause in which Testator disposed of his stock in the Company absolutely, without condition. Having done so, testator may not subsequently purport to dictate what his beneficiaries may or may not do with

- 13 -

the powers granted to them as owners of the stock. Had testator wished to condition the bequest on maintaining Deborah on the Company payroll, he could have done so. *See In re Miller's Estate*, 110 A.2d 200 (Pa. 1955) (condition precedent enforced where testator gave fund to orphanage "**providing** the said [orphanage] will elect to comply with the following directions, conditions and requests under which said estate is willed, devised, bequeathed and given") (emphasis added); *In re Thompson's Estate*, 155 A. 925, 926 (Pa. 1931) (enforceable conditional bequest found where testator gave to certain individuals "all the real estate and machinery and equipment owned by me at the time of my death . . . **conditioned upon** the formation of a partnership within one [] year after my death . . . [t]o continue the business, conducted by my brothers and myself, under the name of 'Thompson Brothers'") (emphasis added). He did not.

> Where the dominant purpose shown by a [bequest] is to vest a fee, this estate cannot be stripped of its inherent attributes by subsequent words indicating an intent so to do[. O]n the other hand, [] in finding the controlling intention, all the words used by testator should be taken into account, and if the intent to restrict [in the sense of making a gift of less than a fee] is clearly the dominant one, it must be given effect.

*In re Robinson's Estate*, 128 A. 437, 438 (Pa. 1925). Here, the language used by the testator evidences a dominant intent to bequeath to his children and grandson, without condition or restriction, his shares in the Company. As noted above, Testator did not use language evidencing an intent that the bequest of his stock was in any way conditional upon the beneficiaries continuing to retain Deborah on the payroll. Testator did not, for example,

say "I give my stock to my children and grandchild, **provided that** Deborah remain on the payroll." ***See, e.g.***, ***Estate of Rozanski***, 514 A.2d 587, 590 (Pa. Super. 1986) ("In order to make the devise subject to a condition subsequent the testator would have used words of limitation and would have clearly indicated that the beneficiary could use the home only until the occurrence of a named event."). Rather, the gift was outright and absolute. As such, a consideration of the document as a whole reveals that the words must be deemed precatory and non-enforceable.

Additionally, the Courts of this Commonwealth have repeatedly held that "the absence of a gift over is indicative of a non-conditional gift." ***In re Bloch***, 625 A.2d 57, 61 (Pa. Super. 1993), citing ***Brumbach's Estate***, 95 A.2d 514 (Pa. 1953). Here, Testator—despite including gifts over with regard to other bequests under his will—made no such provision for the gift of his business holdings in Item FOURTH(B).

Finally, a testator lacks the authority to dictate the policies of a corporation by will, notwithstanding the fact that he is the majority—or even sole—stockholder.

> It is well established that a corporation is a distinct and separate entity, irrespective of the persons who own all its stock. The fact that one person owns all of the stock does not make him and the corporation one and the same person, nor does he thereby become the owner of all the property of the corporation. The shares of stock of a corporation are essentially distinct and different from the corporate property[.]

***Barium Steel Corp. v. Wiley***, 108 A.2d 336, 341 (Pa. 1954).

In **In Re Goetz's Estate**, 85 A. 65 (Pa. 1912), the testator left the income of his estate to his widow for life. Testator had been a partner in a business; the other partner was bought out and a corporation was organized in which the estate owned all the stock. The Orphans' Court proceeded to ascertain the profits of the corporation and award them to the widow. Our Supreme Court reversed, concluding as follows:

> The estate, as a holder of all the stock, would not be the owner of the corporation, but only of the shares of its capital stock, which constitute a species of property entirely distinct from the corporate property.
>
> A shareholder has no distinct and individual title to the moneys or property of the corporation, nor any actual control over it. . . . [T]he principle is well[-]established that the shares of the capital stock of a corporation are essentially distinct and different from the corporate property, and that the owner of all the stock of a corporation does not own the corporate property or become entitled to manage or control it. . . . The shares represent a right to participate in profits only.

*Id.* at 66-67. Thus, it is firmly established that "the owner of all or the majority of the shares of a corporation cannot, without more, dictate the policy of a corporation[.]" **Green v. Philadelphia Inquirer Co.**, 196 A. 32, 35 (Pa. 1938).

As the above makes clear, the power that Testator possessed during his life to manage and control the assets of the Company—and thus place Deborah on the Company's payroll—came not from his status as a stockholder. Rather, Testator would have been able to do so only in his capacity as the Company's president pursuant to powers granted him by the Company's corporate governance documents. Upon his death, Testator ceased to be president and

could only pass to his beneficiaries that which he owned—his shares of stock in the Company. As such, he was without the power to dictate the manner in which the Company would conduct its business after his death.

For all the foregoing reasons, we are constrained to conclude that the Orphans' Court erred by enforcing the precatory language expressing the Testator's desire that Deborah remain on the payroll of the Company.

Order reversed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/04/2024