# Bidwell *versus* Pittsburgh, Oakland & East Liberty Passenger Railway Co.

A., B. and C. owned all of the stock of a street railway company and this was fully paid up. To raise money for the uses of the company under a voluntary assessment of the stock, each paid the company a proportionate amount. A. sold his shares to B. and C. and then brought suit against the company in which he recovered the amount paid the company upon the voluntary assessment. B. became bankrupt and his stock was purchased by D. B. then brought suit against the company to recover the amount paid by him upon the voluntary assessment. The cause was tried before a referee under the Act of 1874, who reported as a finding of fact that the payment of the said voluntary assessments to the company were made as voluntary contributions and not as loans to the company. *Held,* (a) That the findings of fact by a referee are as binding as the special verdict of a jury. (b) That the recovery of A. against the company did not operate as a withdrawal of his proportion of the voluntary contributions and thus leave the contribution of B. without consideration. (c) That a shareholder in a corporation has no distinct and individual title to the moneys or property of the corporation. (d) That under the findings of the referee B. could not recover.

November 4th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county:* Of October Term 1886, No. 166.

Debt by D. W. C. Bidwell against the Pittsburgh, Oakland

& East Liberty Passenger Railway Company. By agreement of parties R. B. Carnahan Esq., was appointed referee under the Act of 1874. The facts as they appeared before him on the trial of the cause sufficiently appear in the opinion of the Supreme Court.

The referee reported, *inter alia*, as follows:

The referee finds that the contributions, assessments and payments of money by the plaintiff to the defendant company were, when they were made, advanced and paid, voluntary assessments on his stock as a stockholder, and were not loans to the company and created no debt, and were not intended to be loans or debts, either by the plaintiff or the defendant company, and that there has been no subsequent assumption, acknowledgment or recognition of the same by the defendant company, as loans or debts, and that accordingly the plaintiff cannot recover as respects said advances, contributions and voluntary assessments. It is strongly urged by plaintiff's counsel that the plaintiff's claim is supported by a strong equity in view of the recovery in General Barton's suit. This would be true and have much weight if the stock remained in the hands of the three original stockholders; but General Barton did not sue until after he had disposed of his stock, and the whole of Mr. Zug's has passed into the hands of Captain Gordon without notice of the plaintiff's claim or means of acquiring information; and he owns at present three eighths of the entire stock. The plaintiff cannot have, under these circumstances, any equity against the corporation and the holder of a majority of the stock. The so-called equity would work the grossest injustice as respects all the stock but that held by the plaintiff.

In the affidavit of defense, it is admitted, that there is due to the plaintiff the sum of $173.89, with interest from October 1st, 1880, being a balance due on a spring wagon furnished by the plaintiff to the defendant. The defendant tendered judgment in its affidavit of defense for this sum, with costs to the date of filing of the affidavit of defense and tender of judgment. Under rule 68 of the Common Pleas Courts of this county, it is provided: "If the defendant in his affidavit admit a certain sum to be due and offer to confess judgment for the same, which is not accepted by the plaintiff, defendant shall be entitled to recover costs subsequently accruing, unless the plaintiff recovers a greater sum than the amount offered."

There was no controversy before the referee in reference to this balance and in fact no testimony was offered on either side in reference to it, and it does not appear to be at all in controversy. The referee accordingly finds in favor of the plaintiff for the sum of $233.85, being the amount of said bal-

[Bidwell *v.* P., O. & E. L. Pass. R. R. Co.]

ance with interest to this date. The interest is computed to this date for the reason that there appears to have been no tender of payment, but the judgment must be entered without costs to the defendant, under the rule above referred, which have accrued since the tender of judgment.

Exceptions were filed by the plaintiff to the findings of the Referee which were reviewed by him. He reported that he found no reason to change his report. Judgment was accordingly entered on the report of the Referee for the plaintiff in the sum of $233.85. The plaintiff thereupon took this writ assigning for error *inter alia* the findings of the Referee upon which the judgment was entered.

*George Shiras, Jr.*, and *S. Schayer, Jr.*, for plaintiff in error. —The adjudication in Barton's case establishes Bidwell's right to recover. Barton's recovery operated as a withdrawal of the amount paid by him, there was therefore no consideration for Bidwell's payment. The books of the company show that the payment of Bidwell was not a gift but a loan. These books were always open to any purchaser of stock, and Gordon therefore must have known of this debt against the company.

*T. M. Marshall, (Imbrie* with him),'for defendant in error.— The findings of the Referee are conclusive. The adjudication in Barton's case has no effect upon this.

The books of the company show the payments of "assessments" and not loans.

Mr. Justice CLARK delivered the opinion of the court, November 15th, 1886.

This is an action of debt brought by D. W. C. Bidwell against the Pittsburgh, Oakland & East Liberty Passenger Railway Company, to recover the amount of certain loans, which the plaintiff alleges he made to the company at various times during the years 1873, 1874 and 1875, amounting with the interest to $23,988.73.

From the report of the learned referee we find that in the year 1873, D. W. C. Bidwell, C. Zug and Gen. W. B. Barton became the owners of the entire stock of this company; Zug owning one half, Bidwell one fourth and Barton one fourth of all the shares. The affairs of the company were at the time in very bad condition; a large part of the track required relaying, new stables and station houses were needed and new cars, fresh horses and other equipments were wanted, whilst the treasury was empty and the whole stock was fully paid up. To meet the emergency which was thus presented the stockholders, Bidwell, Zug and Barton, voluntarily assessed their

stock, and paid *pro rata* assessments into the company to be used and applied in the improvement and repair of the company property. It is said that Zug advanced about $30,000, and Bidwell and Barton each about $15,000, for the purposes mentioned.

On the 1st October, 1875, Barton sold his shares to Zug and Bidwell; by means whereof, Zug then held five eighths, and Bidwell three eighths of the capital stock. He then brought suit against the company to recover the amount which he had contributed, upon the voluntary assessments. In the trial of this action Barton testified in substance that these advancements were made on a distinct agreement, between the three owners of the stock, that the money advanced was to be loaned, and was to be repaid by the company; although he was in this respect flatly contradicted, by Zug and Bidwell, Barton recovered a judgment for the full amount of his claim; he subsequently remitted a portion of the judgment and the residue was paid by the company.

Mr. Zug afterwards became bankrupt, and his shares in the capital stock subsequently passed into the hands of John T. Gordon, the present holder thereof, who is now the president of the company.

In August, 1883, Mr. Bidwell brought this suit. In his affidavit of claim he says, that at the time said advancements were made the stock of the defendant company was owned by himself, Barton and Zug, and he supposed and believed, that the contributions made by all the stockholders were in betterment of the stock of the company, *and were not to be treated as debts;* but that such understanding and belief were not supported by the facts, that subsequently Barton recovered judgment in proceedings at law for the full amount of his advances under that arrangement, amounting to over fourteen thousand dollars, which judgment was paid and satisfied to the prejudice of the plaintiff's stock in the company, and that since the recovery of the judgment by Barton all of these advances have been considered and treated as loans by the company, but that owing to the embarrassed condition of the company the plaintiff had not pressed the payment of the amount due and owing him.

The referee finds, as matter of fact, that moneys were actually advanced, by the plaintiff, to the company in the several amounts, and at the times stated in the affidavit of claim, and that the same were used and expended by the company; and that as the moneys were from time to time received they were entered upon the books of the company to the credit of the contributors, respectively, in an account kept for that purpose. The referee further finds, and states in his report in the most

explicit manner, that these advances were in point of fact made by Bidwell, Zug and Barton as voluntary contributions to the company; that the whole volume of the stock was in their hands and that the amount of their respective advances were measured by a consentable *pro rata* assessment of the shares; that they were not made as loans nor were they intended or treated as such either by the contributors or the company, and that there was no agreement, then, or since, on part of the company to reimburse the contributors or any of them for the sums thus advanced. These findings of fact, by the referee, are of course conclusive here; we cannot review them, they are as binding upon us as if they had been found by a jury in the form of a special verdict; the case must therefore be considered upon the assumption of the facts stated.

It is contended, however, that as the company entered these advances on their books, in such form as to indicate an indebtedness therefor; as each advance was credited in the account to the person who advanced it, and impliedly debted to the company; as the books could not be balanced except upon the assumption that the advances were debts of the company, and as the entries were suffered to remain upon the books after Barton's recovery as before, an implication thereby arises of the company's assumption of the whole amount. It may be that these entries, unless treated as exhibiting an indebtedness, were not in the form they might or ought to have been, but we cannot ignore the findings of the referee, in order that the books may be brought within the established rules of correct book-keeping. Under the facts as found, it is of little consequence how or in what form these entries were made on the books, or indeed whether they were entered at all; the entries, in whatever form could not establish an indebtedness of the company, if in point of fact, no indebtedness existed, and this is the force of the referees' finding on that point. As a business transaction it was certainly quite as reasonable, under the circumstances, that Bidwell, Zug and Barton should contribute money with a view to the enhancement of the value of the property, and the betterment of their stock, or that they should loan the money in the exact proportion of their shares for the same purpose; and as it appears that the former was what they intended to do, and what they actually did do, it is probable that the entries were simply for convenience of reference in the adjustment from time to time of the contributions according to the interest of the contributors. No implication would arise from the entries at the time they were made, for we know this was not the meaning and intention of the parties, and certainly none could arise from the fact that the en-

tries afterward remained in the same form on the company's books.

A question has been raised on the argument as to the effect which should be given to Barton's recovery of that portion of the advances made by him. It is said that the consideration for Bidwell's advances was that Zug and Barton would advance similar and proportionate amounts; that all of the advances were made with the same intent under the same calls and for the same purposes; that it was never contemplated or intended that any one of them might recover his advance and the others be precluded from such recovery, and that therefore when Barton withdrew his funds the consideration for Bidwell's advances wholly failed. Upon this ground, it is contended, that when the court in Barton's case construed the agreement, common to all, to be consistent with a recovery against the company, it adjudicated it as to Zug and Bidwell also; that it is a matter of no consequence whatever, what Zug or Bidwell or both of them may have supposed or intended at the time, when the right was adjudicated as to one, it fixed the nature of the transaction and settled the question as to all. The apparent equity of the plaintiff's claim gives color to the suggestion, and the very ingenious argument made upon it has caused us to consider the question with some care. We think however that the argument is more specious than sound.

If this were a question between Bidwell, Zug and Barton individually; if their respective advances for a common purpose, and for their common benefit, had been deposited in a common fund, under their control, upon a supposed tripartite agreement such as is alleged to have existed in this transaction, we would not hesitate to say that Barton's recovery of his advance, upon an alleged misconception of the common understanding, would enable the others to withdraw theirs; and this upon the principle that the consideration which was common to all failed, through the compulsory withdrawal of Barton's share of the common fund. But this is not a question between Bidwell, Zug and Barton alone. The railway company was also a party to the transaction; its shares, it is true, were owned by Bidwell, Zug and Barton, but they were only the owners of its shares; it had a legal entity and existence outside of its stockholders, it had rights independent of theirs, and these rights could only be diverted in a proper and legal manner. They might have loaned the money to the company of course, and the company would have been held for repayment of the loan; but they *gave* the money to the company, and the company was not bound to return it. In a meeting of the stockholders the company might in a formal

and proper mode of procedure, have agreed to do so, but the company did not so agree, and we cannot see how it can be compelled to do what it was not under any legal obligation to do.

If the company had received Bidwell's advance, with the understanding that similar and correspondent advances would be made by Zug and Barton, the whole to be used by the company for the joint benefit of the contributors, and then afterwards voluntarily surrendered or repaid the advance of one, a promise might be implied to repay the others also. But Barton's recovery was in an action at law, which was stubbornly contested by the company; the money was paid under legal compulsion and no such implication could therefore arise.

But as owner of the shares merely, neither Bidwell, Zug or Barton, nor all of them together, could bind the company in its corporate capacity, except as they were authorized or empowered by the company so to do; and it is difficult to see how they might derive rights against the company, or between each other, which they would not have power to confer upon others. The shares in a corporation constitute a species of property entirely distinct from the corporate property, a shareholder has no distinct and individual title to the moneys or property of the corporation, nor any actual control over it; the shares represent a right to participate in profits only. The shares of Christopher Zug are now held by Gordon and others, the official management of the company has passed into other hands, and we cannot see how, as against the interest and active resistance of that management, representing a large majority of all the shares, the corporation may be held to Bidwell for payment of a claim which it never owed, and was under no obligation to pay, merely because Barton, similarly situated, had by process of law, somehow succeeded in recovering his.

The judgment is affirmed.