WEST *v.* MEILLMIER.

Opinion delivered December 20, 1926.

1. CORPORATIONS—REFUND OF INCOME TAX—RIGHT OF STOCKHOLDER.— Where stockholders in a corporation advanced the money to pay the corporation's income tax, and were not repaid, the refund of such tax was payable to such stockholders, and one who subsequently purchased the interest of one of the stockholders was not entitled to share in the refund, though the sale included debts and demands due the company, and the buyer assumed all debts chargeable against the seller's interest.

2. ATTORNEY AND CLIENT—AGREEMENT AS TO FEE.—An agreement by two of the three stockholders in a corporation to pay 50 per cent. of the income tax refund as attorney's fee is not binding on the third stockholder, against whom only a reasonable fee can be charged.

3. ATTORNEY AND CLIENT—REASONABLE FEE.—Fifty per cent. of an income tax refund to a corporation *held* a reasonable attorney's fee for recovery thereof, in view of the amount involved and the nature, character and extent of services.

4. APPEAL AND ERROR—CONFLICT BETWEEN DECREE AND BILL OF EXCEP-
TIONS.—There is no conflict between a decree reciting that oral
testimony was introduced and a bill of exceptions reciting that
there was an agreed statement of facts, since it will be considered
that such agreed statement is the oral testimony referred to in the
decree.

5. STIPULATIONS—CONCLUSIVENESS.—No amount of oral testimony
can overturn facts which are undisputed, and which the parties
have agreed to be the facts in the case.

Appeal from Sebastian Chancery Court, Greenwood
District; *J. V. Bourland*, Chancellor; reversed.

STATEMENT BY THE COURT.

W. H. Meillmier and the widow and heirs at law of
John W. White, deceased, brought this suit in equity
against W. E. West to recover their distributive share of
$1,773.01 as assets of the Roughley Coal Company. West
filed an answer, in which he admitted the receipt of the
money as a refund by the United States of income taxes
of the Roughley Coal Company, but avers that the money
belongs to the original stockholders of said corporation,
and asks that the money be distributed to them.

Abe Roughley, an original stockholder of said cor-
poration, was allowed to intervene and claim his pro-
portionate share of said fund.

The case was submitted to the court upon an agreed
statement of facts as follows:

"The Roughley Coal Company, a corporation, was
organized during the summer of 1917. Abe Roughley,
John W. White and W. E. West were the corporators,
each holding a one-third share in the corporation. The
capital stock of said corporation was only $400, and the
company operated a small mine near Hartford, Sebastian
County, Arkansas, each stockholder performing some
part in its operation, for which they respectively drew a
salary which practically exhausted the funds of the cor-
poration as they were earned.

"In the year 1918 the United States Internal
Revenue Department, in checking up the Roughley Coal
Company, made demand upon it for additional income

taxes for the year 1917, and, the company having no funds with which to pay such demands, each of said stockholders advanced out of his own private funds one-third of such demand, and paid the taxes demanded. Nothing further was done by the stockholders of the company with reference to this amount of income tax so paid. The stockholders never made demand upon the corporation to be reimbursed for such sums so paid, and the corporation never at any time repaid to them the amounts so paid.

"On January 27, 1920, intervener, Abe Roughley, sold his interest in said corporation to W. E. West, who in turn sold the same interest to W. H. Meillmier, either on the same day or shortly thereafter. In selling his interest to West, Roughley executed a bill of sale which provided that it 'shall include all debts, demands or other credits due the said Roughly Coal Company, whether liquidated or otherwise, and it is understood the purchaser shall assume all debts and other demands against said Roughley Coal Company.' Nothing was said by West or Roughley at the time concerning the income taxes which had been previously paid by such corporation, nor was there any mention made of it by either West or Meillmier when West sold the interest to Meillmier. It was agreed at the trial that neither of them knew at that time that any excessive taxes had been paid by the corporation or by the stockholders for the corporation.

"After this sale of stock, the stockholders of the corporation were W. H. Meillmier, W. E. West and John W. White, who immediately began to liquidate, selling its tangible property, paying its debts, and this same year (1920) the corporation was dissolved in accordance with the statutes. After the dissolution of the corporation, John W. White died, and his wife and children became his heirs, and are plaintiffs in this action as such.

"In March, 1923, W. E. West and Abe Roughley were informed by Mr. John W. Philbeck, who was at the time preparing an income tax return for West, that, during the first few years that the income tax was in force, gross

errors had been committed in calculating the amount of taxes due, and that they could probably obtain a repayment of some of the past paid taxes of the Roughley Coal Company by making application. He offered his services for the purpose of making demand for a refund, making a charge of $25 and his expenses per day for getting up the data and presenting it to the department. This was not satisfactory to Mr. West. He finally agreed to let Philbeck take the matter in hand and work it out and present the claim on a fifty-fifty basis. This agreement was finally made, and Philbeck took a contract, a copy of which is filed as Exhibit A to intervener's petition.

"Philbeck, on March 9, 1923, prepared a demand on the United States Treasury Department for such refund, and appended his argument to same. He demanded $1,800, and, during the following year, 1924, received a refund of $1,773.01. This money came to West as trustee for the Roughley Coal Company, and Philbeck was paid the sum of $704.16, leaving a balance of $182.34 claimed by Philbeck and unpaid. The plaintiff in this action had no knowledge of the action of West and Roughley until after the money was received and turned over to West."

The chancellor found that the amount of the income tax refunded by the United States to the Roughley Coal Company amounted to $1,773.01; that twenty per cent. of this amount should be paid to John W. Philbeck as a reasonable fee for his legal services in recovering said fund; that Abe Roughley was not entitled to any part of said fund; that the twenty per cent. attorney's fees allowed Philbeck was a proper charge against the fund, and that, after deducting the same, West should pay one-third of the balance to W. H. Meillmier and one-third thereof to the widow and heirs-at-law of John W. White, deceased, as the distributees of his estate. A decree was entered of record in accordance with the findings of the chancellor. To reverse that decree W. E.

West and Abe Roughley have duly prosecuted an appeal to this court.

*Hays, Priddy & Hays* and *John W. Goolsby,* for appellant.

*A. M. Dobbs,* for appellee.

HART, J., (after stating the facts). It is the contention of counsel for appellants, West and Roughley, that W. H. Meillmier had no interest in the fund involved in this lawsuit; that Philbeck is entitled to one-half of it, and that the balance should be distributed equally between W. E. West, Abe Roughley and the widow and heirs of John W. White, deceased, as the distributees of his estate.

The undisputed facts show that these parties originally advanced to the Roughley Coal Company the amount of its income tax, which is the basis of the refund to that corporation by the United States of the $1,773.01 involved in this case. In this contention we think counsel are correct.

Counsel for appellee, Meillmier, bases his right to a distributive share of the funds under his contract whereby he acquired the one-third interest of Abe Roughley in the Roughley Coal Company.

The record shows that Roughley sold his stock to West, and West at once transferred the same to Meillmier. The bill of sale provides that it "shall include all debts, demands or other credits due the said Roughley Coal Company, whether liquidated or otherwise, and it is understood the purchaser shall assume all debts and other demands against said Roughley Coal Company."

Counsel for appellee seeks to uphold the decree upon the principles of law decided in *Delano* v. *Butler,* 118 U. S. 634, and *Bidwell* v. *P. O. & E. L. Pass. Ry. Co.* 114 Pa. 535, 6 A. 729.

In the case first cited, a national bank became insolvent, and the Comptroller of the Currency authorized an increase of the capital stock of the bank in order to enable it to resume business. The stockholders voluntarily paid an assessment for this purpose. The capital stock was

increased to an amount equal to the aggregate sum of the voluntary assessments, and the money so obtained was used by the bank in the regular course of business. Under these facts the court held that the assessment was a voluntary one, made by the stockholders themselves under authority of law, to increase the capital stock to enable the bank to resume business, and therefore was not a loan of money to the bank.

In the second case cited, the affairs of the corporation were in bad condition. A large part of the track of the company needed repairing, and new station houses were needed. New equipments of cars and horses were also needed. The treasury was empty. To meet the emergency the three persons who owned all the corporate stock voluntarily assessed their stock and applied the money thus raised to the improvement and repairing of the company's property. This resulted in the enhancement of the value of the corporate property and in the betterment of their stock. It was held that, as a matter of fact, the transaction amounted to a voluntary assessment of their stock, and was not a loan of money by the stockholders to the corporation.

The facts are materially different in the case at bar. The transaction did not result in the increase in value of the property of the corporation or in the betterment of its stock. No new assets accrued to the corporation. The money advanced was not placed in the general assets of the corporation and used by it in due course of business. The money was paid in by the stockholders for a specific purpose, and used for that purpose alone. While the proof is not definite and specific, it is fairly inferable, from the agreed statement of facts, that the three stockholders intended to advance what money was actually needed to pay the income tax of the corporation for the year 1917. They evidently thought that the amount demanded was the amount due the United States. They only intended to advance the amount due to the United States, and there is nothing to show that it was intended that any excess payment should be returned to the cor-

poration and constitute a part of its assets. Rather, the equity of the case is that, if the amount advanced by the stockholders was in excess of the income tax due by the ·corporation for the year 1917, the payment of the excess was made either under a sort of compulsion or under mistake of fact. The excess should be returned ratably to the persons who contributed it, and not to the corporation for whose benefit it was paid.

In this connection, it may be stated that neither of the parties to this suit knew of the excess payment of taxes at the time West sold to Meillmier. The equity of the case upon the merits is with the persons who advanced the money with which to pay the income tax of the corporation for the year 1917, and we hold that they are entitled to the excess thereof in equal shares as a loan of money to the corporation.

If it be conceded that the $1,773.01 returned by the United States to the Roughley Coal Company is a debt or demand due said corporation and that Meillmier acquired an undivided one-third interest therein under the terms of the bill of sale, this does not help his case any. The bill of sale likewise makes him liable for all debts and other demands against the Roughley Coal Company. Now the undisputed facts show that the income tax of the Roughley Coal Company was not paid out of its assets, but was paid by West, White and Roughley out of their individual funds. They each owned one-third of the stock of the corporation, and contributed an equal amount in the payment of the income tax of the corporation. The amount of money so advanced by them was never repaid by the corporation. Hence it is a debt due them by the corporation. The corporation has dissolved and has no other distributive assets than the amount refunded to it by the United States. This fund constitutes its sole assets for the payment of its debts. No other debts are shown to have been owed by the corporation. Hence this sum of money should have been distributed to West, Roughley, and the widow and heirs of the estate of John W. White, deceased,

in equal proportion, after deducting the amount which should have been allowed and paid to John Philbeck for recovering the same.

This brings us to a consideration of the proper amount to be allowed Philbeck for his legal services in recovering the fund in question. West and Roughley made a contract with him whereby he was to receive as a contingent fee fifty per cent. of the amount recovered. They had no authority from the corporation or from the remaining stockholder to make such a contract. Hence White could not be bound by the contract, and his proportionate part of the fund could only be charged with a reasonable attorney's fee.

There is no testimony in the record to show what would be a reasonable fee. West and Roughley were entitled to two-thirds of the amount recovered, and the fact that they made a contract with Philbeck to give him fifty per cent. of the amount recovered indicates that they thought this to be a reasonable fee. Then, too, the fact that the corporation had been dissolved, the uncertainty of the recovery, the complex nature of the claim, and the fact that the attorney's services might be extended over a long period of time, are all elements to be considered in determining whether or not the contract fee of fifty per .cent. of the amount recovered was reasonable. The corporation had its domicile at a great distance from Washington, and the fund was recovered by the exertions of Philbeck. In the absence of any direct and positive evidence as to whether the fee was reasonable, considering the amount involved, the nature, character and extent of the services required, we are of the opinion that a contingent fee of fifty per cent. of the amount to be recovered was not unreasonable, and that such fee should be a charge against the whole fund. It follows that the court erred in the rendition of its decree as set forth in our statement of facts.

Finally, it is insisted that the decree must be affirmed because the record does not contain all the evidence. In making this contention, counsel for appellees rely upon

the principles of law in *Weaver-Dowdy Co.* v. *Brewer,* 129 Ark. 193, 195 S. W. 367, to the effect that, where there is a conflict between the recitals of the decree and the bill of exceptions, the record entry must prevail. The decree, after reciting the appearance of all the parties, contains the following:

"And all the parties announcing ready for trial, the trial proceeds upon the pleadings filed by the parties, exhibits, oral testimony introduced and the agreements of the parties." The bill of exceptions at the commencement contains the following:

"Thereupon the pleadings in the case, the complaint of plaintiff, the answer of defendant, and interplea of the intervener, were by the respective parties presented to the court, and the cause was submitted to the court on an agreed statement of facts, as follows."

At the conclusion of the bill of exceptions there is an agreement between the attorneys of the respective parties that it is a true and correct statement of the facts as agreed to in the trial of the case. In the first place, it may be said that, when the recitals of the decree and of the bill of exceptions copied above are considered together, there is no inconsistency between them. Inferentially, at least, it should be considered that the agreed statement of facts is the oral testimony referred to in the decree. This is especially true when we consider that the chancellor filed a written opinion in which the facts are set out substantially as stated in the agreed statement of facts. Then, too, the facts agreed to are undisputed, and no amount of oral testimony could overturn facts which are undisputed and which the parties, by their agreement, have alleged to be true and to be the facts in the case. Then, too, the facts agreed to settle all the issues raised by the pleadings.

It follows that the decree will be reversed, and the cause will be remanded with directions to the chancellor to enter a decree in accordance with this opinion.