## McKee Estate

Before Klein, P. J., Bolger, Lefever, Hunter, Saylor and Shoyer, JJ.

494

496

498

500

502

504

506

508

510

514

518

*Mercer L. Lewis, Myron H. Fineman, John F. Thaete, William T. Coleman, Jr., Herbert R. Cain, Jr.,* and *D. Alexander Wieland,* for exceptants.

*James E. Gallagher, Jr.,* and *Gerald Ronon,* contra.

KLEIN, P. J., February 6, 1953.—John McKee died in 1902, at the age of 81. He was a Negro with a dream in his heart, and a determination to convert his dream into reality. He was not a particularly modest man and obviously had an intense desire to perpetuate his name.

He left a considerable fortune, consisting principally of large real estate holdings which he had acquired in

Pennsylvania, New Jersey, West Virginia, Georgia and Kentucky. His dominant purpose, as expressed in his carefully drawn testament, appears to have been to devote this fortune to the fostering and promoting of integrated education for white and colored boys, between the ages of 12 and 18, by establishing a nautical school to prepare the students for service in the United States Navy.

The account which is the subject of the present audit, was filed by His Eminence, Dennis J. Dougherty, Cardinal Archbishop of Philadelphia, on October 1, 1947. In the five-year period which has elapsed since that date, this case has been the subject of a most searching and thorough inquiry and study by Mr. Blessing, the amicus curiae appointed by the court, and by Judge Bolger, the learned auditing judge.

The report of the amicus curiae and Judge Bolger's adjudication are models of scholarly thoroughness. Since we are in complete accord with Judge Bolger's conclusions, and concur in the reasons he assigns as the basis therefor, we will not attempt to rewrite what he has already said so fully and so well.

Testator's will was obviously patterned after the will of Stephen Girard, and the charitable trust which he sought to establish was defined with clarity and precision comparable to the trust created by Girard, which has been upheld by the courts as a proper and valid charity.

As the result of our study of this voluminous record, we are completely satisfied that testator created a valid charitable trust and that neither the statute against accumulations nor the rule against perpetuities has any application thereto and, further, that none of testator's next of kin have any interest therein or right thereto.

It also seems evident that even if the next of kin ever had any interest in the estate, the deeds of release

executed by Abby A. P. Syphax, testator's daughter, her five children and by Dr. Henry McKee Minton, testator's grandson, in settlement of the proceedings instituted to contest the probate of testator's will, operate as a complete relinquishment of all their rights and interest in this estate, as well as the interests of those who are now claiming through them, not only under the will but also under the provisions of the intestate laws.

There cannot be the slightest question concerning the correctness of the auditing judge's finding that "the fund as presently constituted is grossly inadequate to fulfill the charitable purposes as specified in the will." As a matter of fact, none of the parties in interest challenge this conclusion.

It is necessary, therefore, to direct the application of the fund in accordance with the doctrine of cy pres.

A great transition has taken place in the United States in the 50 years which have elapsed since the testator's death. In this period the social consciousness of our people has been awakened and greatly developed. In keeping with this trend, our courts have reversed their earlier position in regard to the cy pres doctrine. From an early attitude of extreme aversion, modern courts are disposed to apply the doctrine with the utmost liberality.[2]

In the present case the disappointed charitable claimants are impatient; and this is natural. However, we are all of the opinion that the scholarship plan adopted in the adjudication is fair and reasonable and the most practical method of disposing of the questions confronting us at the present time.

Since most charitable trusts are perpetual in character, a delay of 5 or 10 years to permit additional study and research to determine whether testator's

---

2. Judicial Attitude Toward Cy Pres Doctrine, by Edith L. Fisch, 25 Temple Law Quarterly 177.

plans can actually be put into operation, and if not, to consider the manner in which the cy pres doctrine can best be applied, will not be of particularly serious consequence.

Although all of the charities which have come forward to claim this estate are most worthy, and are serving the community well, not a single one of them renders exactly the type of service envisaged by John McKee. Since testator's primary aim was to foster inter-racial integrated education, it seems clear to us that under the circumstances this fund should not be awarded to religious organizations, hospitals or similar institutions. If the conclusion is ultimately reached that a school cannot be built and operated as specified in the will, we believe that the corpus of this trust will have to be awarded to an educational institution which teaches both white and colored students. We might be committing irreparable error if we accede to the wishes of the charitable claimants at this time and award to them the corpus of this trust. We certainly would be straying far afield from the course charted by testator.

Under the scholarship plan suggested by the amicus curiae and adopted by the auditing judge, we hope to learn a great deal about the possibilities of integrated education in the next five years. With this additional information we should be in a much better postion to solve the difficult problem confronting us in this case. It is quite possible, for instance, that one or more of the present applicants might alter its policies sufficiently to qualify at a later date to receive the trust res.

The plan adopted by the auditing judge is in accord with the practice which we have been following recently in similar cases, in which the court retains supervisory control over a fund for a limited period of years in order to permit the situation to crystallize. See Craig's Estate, 56 D. & C. 135, affirmed by the Supreme Court, 356 Pa. 564 (1947); Ashbridge's Es-

state, 61 D. & C. 279 (1948); Wanamaker Estate, 67 D. & C. 517, affirmed by the Supreme Court, 364 Pa. 248 (1950).

All of the exceptions are therefore dismissed and the adjudication is confirmed absolutely, without prejudice to the rights of the charity claimants to present their claims de novo at the audit of the next account filed by the trustees.