## Pennsylvania Home Teaching Society

2

*Morgan R. Jones,* of *Drinker, Biddle & Reath,* for petitioner.

*Samuel T. Swansen* and *George B. Ross,* of *Dechert, Price & Rhoads,* for proposed recipient corporation.

*James W. Sutton, Jr.,* for the Commonwealth as parens patriae.

KLEIN, A. J., July 29, 1975.—This matter comes before us as one of first impression under Pennsylvania Rule of Judicial Administration No. 2156, relating to nonprofit and cemetery corporations, adopted April 11, 1975, by the Pennsylvania Supreme Court.

### THE FACTUAL BACKGROUND

The Pennsylvania Home Teaching Society and Free

Circulating Library for the Blind ("society") is a Pennsylvania corporation not-for-profit, incorporated January 29, 1901, pursuant to the General Corporation Law of April 29, 1874, P. L. 73, as amended, 15 PS §3001, and is presently governed by the Corporation Not-for-Profit Code of November 15, 1972, P. L. 885 (No. 271), 15 Pa. C.S.A. §7101, et seq. Its corporate purposes, as set forth in article II of its charter are as follows:

"The purpose for which the corporation is formed is the instruction of the blind in the art of reading by means of books printed in embossed or raised Moon type or other characters at their homes and elsewhere, and to establish and operate by itself or through the medium of others a free circulating library or libraries of books printed in said type or other characters for the use of the blind."

The society carried out its first corporate purpose—instruction of the blind in the art of reading—until, beginning approximately 30 years ago, the program of home instruction of the blind was, for all practical purposes, preempted by government programs and governmentally-financed programs.

During the last 30 years, the society's second corporate purpose—maintaining a free circulating library for the blind—has been carried out by the distribution of its net income to the Library for the Blind and Physically Handicapped, a department of the Free Library of Philadelphia ("library"), Volunteer Services for the Blind ("VSB") and Science for the Blind, Inc., all of which organizations were engaged in the circulation of reading material for the blind. The activities of Science for the Blind, Inc., with which the society was concerned, are now carried on by the VSB.

The society has, therefore, been functioning merely as a conduit for the distribution of its income to other

charities and believes that because of its limited resources it would continue to so function in the future. In so acting, the society must use a significant amount of its income for administrative costs, e.g., in 1973 approximately 18.9 percent of the income was spent for administrative costs, and in 1974, 13.4 percent.

For these reasons, the Board of Directors of the society determined that its corporate purposes can be best carried out and greater benefit gained from the assets if it were to distribute its assets in equal shares to the library and VSB to use the assets for providing reading material for the blind. To implement its determination, the Board of Directors of the society approved the following:

"ACTION BY UNANIMOUS CONSENT OF DIRECTORS IN LIEU OF MEETING:

"The undersigned, being a director of the Pennsylvania Home Teaching Society, a corporation not-for-profit of the Commonwealth of Pennsylvania, by consent in writing pursuant to the authority contained in Section 7727(b) of the Pennsylvania Corporation Not-for-Profit Code of 1972, in lieu of a meeting of directors, does hereby consent to the following resolutions:

"WHEREAS The Free Library of Philadelphia and Volunteer Services for the Blind are engaged in providing services for the blind which are compatible with and in furtherance of the lawful purposes of The Pennsylvania Home Teaching Society ('the Corporation'), specifically the transmittal of knowledge and information to the blind through books and other media;

"WHEREAS the Corporation has ceased its independent activities and has for many years paid its net income to The Free Library of Philadelphia, Volunteer Services for the Blind, (together with Science for the Blind, Inc.) for these lawful purposes;

"WHEREAS Science for the Blind, Inc. is splitting its activities into two separate corporations, one a nonprofit corporation and the other a business corporation;

"WHEREAS the Corporation has determined that the successor corporations to Science for the Blind, Inc. cannot effectively continue programs warranting continued support by the Corporation;

"WHEREAS the Corporation by resolution of June 24, 1974 has authorized the distribution of 40% of its net income from January 1, 1974 to June 30, 1974 to The Free Library and 30% thereof to Volunteer Services for the Blind, with the remaining 30% to be retained pending further action of the Board;

"WHEREAS, subject to approval of the Orphans Court Division of the Court of Common Pleas of Philadelphia, and except as hereafter stated with respect to net income, the Corporation desires to distribute its net assets in equal shares to The Free Library of Philadelphia and Volunteer Services for the Blind to be used for these lawful purposes;

"WHEREAS the Corporation has no members, so that affirmative action of this Board to distribute the net assets of the Corporation will be sufficient corporate action for this purpose;

"NOW THEREFORE BE IT RESOLVED:

"1. That the president and other appropriate officers of the Corporation proceed to collect all sums due to the Corporation, to convert into cash sufficient corporate assets required to discharge its liabilities, and, out of the assets of the Corporation, to discharge or make adequate provision for the discharge of all liabilities of the Corporation, according to their respective priorities.

"2. That after discharging all of its liabilities or otherwise making adequate provision therefor as

described above, and securing approval of the proposed distribution by the Orphans Court Division of the Court of Common Pleas of Philadelphia, this Corporation distribute its net assets, including any interest to which, in the future, it would be or may become entitled and as to which it has the power to direct distribution (including any such interests under the wills of Bertha Wurts Godwin and Julia Bailey, deceased), in equal shares to The Free Library of Philadelphia and Volunteer Services for the Blind, said funds to be used in programs for the transmittal of knowledge and information to the blind through books and other media; provided, however, that the Board of the Corporation may by subsequent resolution approve the distribution to Science for the Blind, Inc. of some or all of that portion of the Corporation's net income from January 1, 1974 to June 30, 1974 not distributed by the Board's resolution of June 24, 1974 referred to herein.

"3. That the president and other appropriate officers of the Corporation are authorized to take all actions necessary to effect the distribution of the net assets of the Corporation upon the terms as aforesaid, as may be required by the Pennsylvania Corporation Not-for-Profit Code of 1972, the Internal Revenue Code and other applicable laws, including, but not limited to, the filing of any requisite petition to the Orphans Court to secure approval of the plan of distribution and the filing within 30 days of the date hereof of Form 966-E advising the Internal Revenue Service of the plan as approved herein."

Thereafter, a Petition under section 7549(b) of the Nonprofit Corporation Law of November 15, 1972, P. L. 885 (No. 271), 15 Pa. C.S.A. §754, for approval of disposition of property was filed in this court by the

society and it contains, in paragraphs 9 to 11, inclusive, the rationale behind its preparation, as follows:

"9. The present Petition is submitted by the Society because of the uncertainty of the interpretation of certain provisions of the Nonprofit Corporation Law of 1972.

"10. Section 7549(b) of such law provides as follows:

" 'Property committed to charitable purposes shall not, by any proceeding under Chapter 79 of this Title (relating to fundamental changes) or otherwise, be diverted from the *objects* to which it was donated, granted or devised, unless and until the board of directors or other body obtains from the court an order under the Estates Act of 1947 specifying the disposition of the property.' " (emphasis added)

"11. Since the Society believes that, upon implementation of its resolution regarding distribution of assets, the assets would not then be diverted from the 'objects to which it was donated . . .', the proposed distribution of assets does not literally fall within Chapter 79 referred to in Section 7549(b) quoted above [15 P. S. §7901 et seq.]. However, in view of the apparent uncertainties of the applicability of Section 7549(b) of the Nonprofit Corporation Law of 1972, the Society respectfully requests this Court's approval of the plan of distribution set forth in the resolution attached hereto as Exhibit B."

The resolution referred to in paragraph 11 is the one quoted in full above.

Following a long-standing practice to require filing of an account whenever the court is asked to distribute assets, we directed that an account be filed in this case. In view of the unusual circumstances, we met with Mr. Jones and Mr. Sutton and it was agreed that, even though no prior account had ever been filed by the

society in this or any other court, it would be acceptable, for the purposes of this audit, for the society to file an account for the period January 1, 1964, to February 26, 1975, with some variations from the usual form of account filed in this court. Such an account is now before us, supported by financial statements of the corporation for the ten years ending December 31, 1974.

At the audit on June 26, 1975, the auditing judge was informed that the assets of the corporation had a current market value of $223,831.50. It was stated that the sources of these funds were legacies and contributions from the general public and that none of the funds is restricted as to use or disposition.

## JURISDICTION OF THE ORPHANS' COURT DIVISION OF THE COURT OF COMMON PLEAS

With this background we address ourselves first to the question whether this court has jurisdiction to audit the account. The law is settled that jurisdiction of the orphans' court is entirely statutory and it possesses and exercises only such powers as are conferred upon it, expressly or by necessary implication: Watson's Estate, 314 Pa. 179, 170 Atl. 254 (1934). See also Freihofer Estate, 405 Pa. 165, 174 A. 2d 282 (1961); Mains's Estate, 322 Pa. 243, 185 Atl. 222 (1936); Cutter's Estate, 286 Pa. 505, 134 Atl. 489 (1926); Cutler's Estate, 225 Pa. 167, 73 Atl. 1111 (1909). Prior to 1965, the orphans' court had no authority or general supervisory power over the internal affairs of any corporation, whether charitable or not. Accordingly, the courts held that the orphans' court did not have jurisdiction to remove from office directors of a charitable corporation, organized at the direction of the will of a decedent, which had received, as a bequest, decedent's residuary estate: Watson's Estate, supra. Likewise, whether to pay an annual

dividend is an internal decision of a corporation not subject to the general supervisory power of the Orphans' Court. In Goetz's Estate (No. 1), 236 Pa. 630, 85 Atl. 65 (1912), the executors of an estate, with the consent of the beneficiaries under the will, organized a corporation for the purpose of continuing testator's business and assigned to the corporation the property of the estate, which thereafter made large profits. The Supreme Court held that the Orphans' Court was without authority to ascertain and distribute the profits of the corporation or to fix the salary of an executor who was the business manager of the corporation. See also Mintz Trust, 444 Pa. 189, 199, 282 A.2d 295 (1971); Comerford Estate, 388 Pa. 278, 292, 130 A.2d 458 (1957); Nixon's Estate, 239 Pa. 270, 113 Atl. 446 (1913).

In order to clarify the jurisdiction of the Orphans' Court, so that continued jurisdiction over certain charitable funds would not depend upon the specific terminology of the award or gift,[1] the Legislature by Act of December 22, 1965, P. L. 1193, 20 PS §2080.301 (No. 476), effective December 26, 1965, added subsection (19) to section 301 of the Orphans' Court Act of 1951, extending the exclusive jurisdiction of the Orphans' Court in certain limited situations. The amendment reads as follows:

"(19) Non-profit Corporations. The administration and proper application of funds awarded by an orphans' court to a non-profit corporation heretofore or hereafter organized under the laws of the Commonwealth of Pennsylvania for a charitable purpose at the direction of the orphans' court or at the direction of

[1] See Wanamaker Trust, 7 Fiduc. Rep. 486 (1957); Balch Estate, 21 D. & C. 2d 97 (1960); Cowperthwaite Trust, 15 Fiduc. Rep. 85 (1964); Cowperthwaite Trust (No. 2), 15 Fiduc. Rep. 638 (1965).

a settlor or testator of a trust or estate subject to the jurisdiction of the orphans' court, except in such instances as the court may disclaim future jurisdiction thereof."

This section has been reenacted as section 711(21) of the Probate, Estates and Fiduciaries Code of December 10, 1974, P. L. 792 (No. 293), 20 Pa. S. §711 (21, with but slight modification. However, it is clear that the amendment has no application to the situation before us for consideration.

On April 11, 1975, the Pennsylvania Supreme Court, upon recommendation of the Judicial Council, pursuant to its authority under article V, sec. 10(c) of the Pennsylvania Constitution, adopted and promulgated a new Pennsylvania Rule of Judicial Administration No. 2156, relating to nonprofit and cemetery corporations. The new rule and its caption read:

"DISTRIBUTION OF BUSINESS WITHIN COURTS OF COMMON PLEAS

"Rule 2156. Orphans' Court Division

"In addition to other matters which by law are to be heard and determined by the orphans' court division of a court of common pleas, the division shall hear and determine the following matters:

"(1) Nonprofit corporations: The administration and proper application of property committed to charitable purposes held or controlled by any domestic or foreign nonprofit corporation and all matters arising under Title 15 of the Pennsylvania Consolidated Statutes (relating to corporations and unincorporated associations) or otherwise where is drawn in question the application, interpretation or enforcement of any law regulating the affairs of nonprofit corporations holding or controlling any property committed to charitable purposes, or of the members, security holders,

directors, officers, employees or agents thereof, as such.

" 'Property committed to charitable purposes' means all property committed to the relief of poverty, the advancement of education, the advancement of religion, the promotion of health, governmental or municipal purposes, and other purposes the accomplishment of which is beneficial to the community, except that the term does not include the property of any inter vivos trust jurisdiction of which was acquired by the court of common pleas prior to January 1, 1969 unless the president judge of the court orders the matter to be heard and determined in the orphans' court division.

"(2) Cemetery companies: Matters relating to cemetery companies under Title 9 of the Pennsylvania Consolidated Statutes (relating to burial grounds)."

We agree completely with the following statement found in the careful annotation of the new rule in the Fiduciary Review for June, 1975:

"Under Rule 2156 the administration and application of all property held or controlled by nonprofit corporations for charitable purposes, including religious corporations, now will be dealt with by the orphans' court division of the common pleas court. It will be noted that the scope of the rule is not limited to administration of charitable funds. Once it is established that the corporation possesses such funds, it would seem that jurisdiction exists as to all internal matters, even though not directly bearing upon such funds. Watson Est., 314 Pa. 179, no longer controls and the Orphans' Court division may hereafter deal with questions such as removal of directors of, and dissolution of, non-profit corporations which hold or control property committed to charitable purposes.

The exception in the new rule for retained jurisdiction of inter vivos trusts where the common pleas had acquired jurisdiction prior to January 1, 1969 is confusing and in any event would seem to have very limited, if any, application."

We, therefore, conclude that this court has jurisdiction over the internal affairs of the society, including the questions which are before us now, i.e., the distribution of its assets to VSB and the library and the ultimate dissolution of the society.

## THE KRESGE GRANT

As we observed earlier, this is a case of first impression in this court. We recognize that the time-honored procedures followed in handling decedents' estates and trusts may not be entirely suitable in cases arising under Pennsylvania Rule of Judicial Administration No. 2156, supra. For this reason, we have solicited the recommendations of the Probate Section of the Philadelphia Bar Association as to the manner in which these cases should be heard, recommendations which have not yet been forthcoming. Nevertheless, we were persuaded to proceed with this case because we were told that the Trustees of The Kresge Foundation had approved a grant of $50,000 to VSB for renovations to a building at 919 Walnut Street, Philadelphia, Pa., to house agencies serving the blind, conditioned upon the raising of certain matching funds. Court approval of the distribution of one-half of the assets of the society to VSB, we were informed, would be necessary to satisfy the conditions for receiving the $50,000 grant. Furthermore, it appeared that time was of the essence if the grant was not to be lost.

At the audit, we learned for the first time that the larger part of the funds being raised by VSB to qualify

for the Kresge grant were intended to be used to pay off its mortgage note covering a $200,000 mortgage loan by The First Pennsylvania Banking and Trust Company, now First Pennsylvania Bank N.A., with a present principal balance of $144,177.42, on the building at 919 Walnut Street. According to Mr. Swansen, this would include the use of $90,000 of the funds anticipated from the society.

The facts leading up to the present situation are briefly the following: The building at 919 Walnut Street was purchased and renovated by VSB with a principal grant from the Nevil Trust of $1,350,000 and the proceeds of the aforementioned mortgage note from First Pennsylvania Bank N.A. The premises had been a loft-type building of ten stories and it was originally contemplated that VSB and the library would use the basement and first three floors, and the balance of the building would be leased commercially, with the rentals so derived used for the VSB program of services to the blind and physically handicapped. Gradually, however, more and more agencies serving the blind took space so that in the near future the premises, known as the Nevil Building, will be the central location for a consortium of coordinated services to the blind in the Delaware Valley, with floor space equaling only three floors available for commercial occupancy. The renovations required to convert loft space to space suitable for service programs by charitable organizations forced VSB into placing the mortgage on its premises. The mortgage note has since been modified by agreement, whereby VSB is currently paying interest alone at the rate of $1,051.29 per month with repayments of principal deferred until February 1, 1976. It is to eliminate this interest expense that VSB seeks to pay off the mortgage.

## CY-PRES

Unfortunately, we cannot agree to the use of the society funds to help liquidate a mortgage on a building owned by VSB. These are charitable funds, and, despite the misgivings of the accountant as to the applicability of 15 Pa. C.S.A. §7549(b), supra, we believe the provisions of the Estates Act of 1947, now 20 Pa. S. §6101 et seq., do apply, and especially the cy pres doctrine as delineated in 20 Pa. S. §6110:

"§6110. Administration of charitable estates

"Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of fulfillment, or if it shall not have been carried out for want of a trustee or because of the failure of a trustee to designate such purpose, the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General of the Commonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific."

We have arrived at this conclusion because we are satisfied the legislative intent expressed in 15 Pa. C.S.A. §7549(b) is to require court approval for any fundamental change as to the disposition of property committed to charitable purposes which affects the basic conditions under which such property was donated, granted or devised. In this case, the benefactors who contributed to the society expected the society to be responsible for investing such funds and expending the income therefrom for the specific purposes for which the trust was created. Distributing such assets to one or more entirely different bene-

ficiaries would, in our opinion, constitute an impermissible diversion from the objectives for which the gifts were made.

It is clear that, due to changing circumstances over a period of many years, the teaching function of the society has withered away and there is no prospect that it will be revived. The library function is being carried on by the distribution of the society's income to other charitable organizations, albeit at considerable administrative expense which is essentially unproductive and could be obviated. We find as a fact, therefore, that one of the society's charitable purposes is impossible of fulfillment and the other is impractical of fulfillment within the meaning of 20 Pa. S. §6110.

The cy pres doctrine requires us to assure that the charitable intent set forth in the charter of the society continues to be performed with as close approximation to the original purposes as possible: Philadelphia v. Girard Heirs, 45 Pa. 9 (1863); Wanamaker Estate, 364 Pa. 248, 72 A.2d 106 (1950); Restatement 2d, Trusts, §399. This, in our opinion, can only be done by keeping intact the principal of the fund to be distributed by the society and applying only the income to the charitable purposes of VSB and the library.

With regard to the selection of VSB and the library as the recipients of the assets of the society, we are satisfied that these two organizations are excellent choices and the best that can be made. At the audit on June 26, 1975, Edward S. Madara, Chairman of the Board of VSB, testified that VSB is a corporation organized for the purpose of conducting "exclusively charitable activities, on a nonprofit basis, to provide and develop appliances and material to facilitate the educational, religious, social, recreational and business activities of the blind and physically handicapped." It is a nonprofit corporation without stock,

but by its bylaws it considers any contributor of $10 or more, or a volunteer worker for 150 hours or more to be a member of the corporation. Its activities include conversion of print into Braille and large type for the visually handicapped, making tape recordings and other material that a blind person of any age, creed or religious belief needs in order to carry on normal activities. In 1974, for example, VSB manufactured four million pages of Braille. Much of the product of VSB is for the library, in response to requests for specific material for a blind person to read. This material is manufactured by VSB and distributed by the library.

VSB has also taken a leading role in the development of an optical scanner called "Optacon". This is a device about the size of a pocket tape recorder which converts the ordinary printed word into tiny needles which can be read by the blind person just as he would read Braille. Although reading with the Optacon is not as rapid as reading standard Braille, its possibilities for use in the home, office and elsewhere for reading book titles, instructions of all kinds, recipes, etc. are endless.

Keith Doms, Director of the Free Library of Philadelphia, testified that there are two organizations which have the responsibility for the free library system in Philadelphia. One is the Free Library of Philadelphia, a nonprofit corporation, the purpose of which is "to establish and maintain for the use of the people of Philadelphia a general library which shall be free to all". The second is the Trustees of the Free Library of Philadelphia, which is an independent board of the City of Philadelphia charged with the duties of operating and maintaining the city's public libraries. The corporation owns, in its own right, certain land, library buildings, equipment and book

collections, and holds substantial general and special funds. For many years, the corporation has combined its resources with those of the trustees by placing its buildings, books and other physical assets in the custody of the trustees and has devoted the income from its funds to the maintenance of the library system. In short, the trustees act as agent for administering the libraries owned by the corporation, holding and circulating the corporation's book collections and disbursing its funds. We are informed that the officers of the corporation are essentially the same persons who serve as officers of the Board of Trustees of the Free Library of Philadelphia.

The Library for the Blind and Physically Handicapped is a department of the Free Library of Philadelphia which is in the care and custody of the trustees. It is physically located in the Nevil Building at 919 Walnut Street, Philadelphia, Pa. Michael P. Coyle, head of the Library for the Blind and Physically Handicapped, testified that it circulates books for the blind in Pennsylvania, serving approximately 12,000 blind and physically handicapped with talking books, Braille, cassettes and large print. It publishes a Juvenile Braille Catalogue with some 1,500 titles; a magnetic tape catalogue with approximately 6,000 titles; a list of children's books in large print available from the library with approximately 800 titles; a directory in Braille of some 56 agencies serving physically handicapped people in Pennsylvania; a compilation of aids for handicapped readers such as magnifiers and book holders; a list of books available in large print for the adult reader with approximately 1,000 titles; and similar publications in support of its overall mission to help the blind and physically handicapped. It is funded through the City Library, the City of Philadelphia and the Free Library of Philadelphia. In

recent years, it has received about $7,000 per annum from the society of which approximately one-half has been devoted to the preparation of its publications and the other half to duplicating materials requested by VSB for its clients.

Mr. Doms assured the court that it is the intention of his organization to conform with the corporate purpose of the society which is entirely consistent with the objectives of the Free Library of Philadelphia. He agreed that any funds awarded from the society would be held in trust and only the income used.

Since VSB and the library have been receiving the income from the assets of the society for many years, there is little doubt that they are the natural choices to perpetuate the charitable purposes for which the society was founded. Under these circumstances, no useful purpose would be served by causing an extensive investigation to be made in search of other possible recipients. We are bolstered in this conclusion by the known fact that a large number of the organizations dealing with the care of the blind of the Delaware Valley work together closely and harmoniously and that the Nevil Building is the hub from which most of the work affecting the blind radiates.

We, therefore, approve the recommendations of the accountant that the society's assets be distributed one-half to VSB and one-half to the library. We direct that the principal funds so awarded be carried in the financial records of each charity in trust as a perpetual restricted endowment fund, the income only to be used for its charitable purposes, provided, however, that the principal awarded to VSB may be used, in a sum not to exceed $90,000, to repurchase VSB's mortgage note from First Pennsylvania Bank N.A., upon condition that this investment be amortized at the rate of $10,000 per annum until liquidated. Thereafter, with

the principal fund restored to its original value, the income shall be used to perpetuate VSB's charitable purposes. We direct further that if VSB fails for whatever reason to make any annual payment of $10,000, it shall so inform this court and the Attorney General within 30 days of the due date of such payment and state the reasons for the lapse.

## JURISDICTION TO BE RETAINED

The society has not requested authority to dissolve at this time because it expects to receive additional funds from two estates. It is said to have a remainder interest in a trust created by the will of Julia Bailey with a market value as of August 30, 1974 of $32,859, and a present income interest in a trust created by the will of Bertha Wurts Godwin.

This court will retain jurisdiction of the activities of the society until its final dissolution and of the trusts to be set up by VSB and the Library with the funds herein awarded. Both VSB and the library are directed to file accountings in their respective trusts at the expiration of ten years from the date of this adjudication.

Waivers of a complete income accounting have been submitted and are annexed.

There was no objection to the account which shows a balance of principal of $237,495.78 and a balance of income, after administration expenses and distributions to charitable entities 4,781.76 making a total of $242,277.54 which is awarded, together with any further income received to time of actual distribution, and subject to the conditions set forth above, in equal shares to the Free Library of Philadelphia and Volunteer Services for the Blind, in accordance with the resolutions

passed by the Board of Directors of the Pennsylvania Home Teaching Society and Free Circulating Library for the Blind which are quoted in full above.

All awards are subject to such distributions as have heretofore been properly made.

Leave is granted to the accountant to make all transfers and assignments necessary to effect distribution in accordance with this adjudication.

A schedule of distribution, duly certified by counsel to be correct and in conformity with this adjudication and if distribution is to be made in kind, approved by all parties in interest, shall within 90 days after the absolute confirmation of this account be submitted to the auditing judge. The schedule, when approved and annexed hereto, will form part hereof.

In view of the above awards, no action will be taken on the petition originally filed by the society for the approval of the distribution of its assets. The petition, however, will be made part of the official record in this matter.

And now, July 29, 1975, the account is confirmed nisi.